CATHERINE DAVIS *v.* PHILIP F. FRACASSO
(AC 19008)

Foti, Pellegrino and Peters, Js.

Argued April 25—officially released August 8, 2000

*Michael P. Shea,* with whom were *David J. Elliott* and *Melissa J. Papantones,* and, on the brief, *Stephen B. Reynolds* and *Valicia Harmon,* for the appellant (substitute defendant).

*William F. Gallagher,* with whom was *John F. Riley, Jr.,* for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. Francis Lamboley, executor of the estate of the named defendant, Philip F. Fracasso, and the substitute defendant[1] in this personal injury action, appeals from the judgment of the trial court rendered after a jury verdict in favor of the plaintiff, Catherine Davis. On appeal, the defendant claims that the court improperly (1) denied his posttrial motions to set aside the verdict, for a new trial and for permission to file a motion for a new trial and (2) denied his posttrial motions without granting him a full evidentiary hearing. We affirm the judgment of the trial court.

---

[1] Fracasso died in October, 1997. Therafter, Lamboley, the executor of his estate, was substituted as the defendant in this action. We refer in this opinion to Lamboley as the defendant.

The following facts and procedural history are relevant to this appeal. On February 15, 1994, the plaintiff commenced an action to recover damages for injuries she sustained in a two car accident in 1992 with the defendant's decedent. On March 31, 1998, the jury returned a verdict in favor of the plaintiff for $540,000, of which $377,400 was for economic damages and $163,000 for noneconomic damages. In calculating the economic damages, the jury appears to have relied on the plaintiff's sworn interrogatory responses, deposition and trial testimony that she was earning approximately $600 per week as a private duty nurse for the Solomon and Gagge families prior to the accident, and that after the accident, she was unable to return to work[2] except for a brief period in 1993.[3]

On April 9, 1998, the defendant timely filed a motion to set aside the verdict, for a new trial and for a remittitur pursuant to Practice Book § 16-35[4] on the grounds that the verdict awarding economic and noneconomic damages was contrary to the law, against the weight of the evidence, and so excessive as to shock the conscience and compel the conclusion that the jurors were influenced by partiality, prejudice, mistake or corruption. In his motion, the defendant also requested permission to file a supplemental motion and memorandum following receipt of the trial transcript.

[2] The plaintiff claimed that the accident caused her to suffer a 5 percent permanent partial impairment of her left shoulder and lower back, which prevented her from performing the bending and lifting required in her activities as a private duty nurse.

[3] The plaintiff was fifty-three years old when the accident occurred. Her loss of earnings, calculated on the basis of $600 per week from the date of the accident to the date of her intended retirement at age sixty-five, plus medical expenses of $2868.36, amounted to approximately $377,268.36.

[4] Practice Book § 16-35 provides in relevant part: "Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict, motions for remittitur [and] motions for new trials . . . must be filed with the clerk within ten days after the day the verdict is accepted; provided that for good cause the judicial authority may extend this time. . . ."

On October 9 and October 16, 1998, the defendant allegedly discovered evidence that the plaintiff had not testified truthfully at trial as to her earnings after the accident and her future earning capacity. The evidence consisted of more than sixty-four checks drawn on the bank accounts of Anna E. Solomon and A. Pharo Gagge and Edwina M. Gagge, and made payable to the plaintiff for services rendered as a private duty nurse after the accident.[5]

The defendant's April 9, 1998 motion was heard by the court on October 9, 1998, at which time the defendant claimed that the verdict should be set aside and a new trial granted on the ground of newly discovered evidence of the plaintiff's fraud. In support of his claim, the defendant described financial affidavits from the plaintiff's 1992 divorce proceedings, indicating that she had earned far less than $600 a month prior to the accident. The defendant also made an offer of proof on the basis of twenty-two checks made payable to the plaintiff from Solomon. The defendant advised the court that Solomon's son, Paul Solomon, had signed the checks and would testify that the checks were paid to the plaintiff for her nursing services after the accident.[6] The defendant requested a one week continuance while he waited to receive an undetermined number of similar checks issued to the plaintiff for postaccident services rendered to the Gagges, which checks he intended to offer into evidence at a future date. The court deferred its ruling.

A second hearing was held on October 20, 1998. The defendant stated that on October 16, 1998, he had received more than forty of the anticipated checks for services rendered by the plaintiff to the Gagges after the

---

[5] The total amount of the checks was $35,660.

[6] The defendant stated that Paul Solomon, an attorney, had been present in the courtroom earlier that day, but was not available to testify at the time the defendant made his offer of proof.

accident. The court, however, denied the defendant's motion for a new trial. The court also denied the defendant's motion to set aside the verdict and for a remittitur, stating that it was not persuaded that the verdict was excessive, was contrary to law or that the jury had been influenced by partiality, prejudice, mistake or corruption.

Following these rulings, the court allowed the defendant to move for permission to file a motion for a new trial on the ground that the plaintiff knowingly testified falsely at trial and that the jury relied on her false testimony in rendering its verdict. The defendant filed the motion pursuant to Practice Book § 16-35 and General Statutes § 52-270, which permit an extension of time to file a motion for a new trial beyond the ten day limit provided in Practice Book § 16-35 for good cause shown, and pursuant to his timely April, 1998 motion for permission to file a supplemental motion and memorandum. Thereafter, the court denied the defendant's motion for permission and rendered judgment for the plaintiff in accordance with the jury verdict. This appeal followed.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the 'abuse of discretion' standard." (Citation omitted.) *Jeffries* v. *Johnson*, 27 Conn. App. 471, 475, 607 A.2d 443 (1992). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Rivera* v. *Saint Francis Hospital & Medical Center*, 55 Conn. App. 460, 463–64, 738 A.2d 1151 (1999). "[W]e do not . . . determine whether a conclusion different from the one reached could have been reached."

(Internal quotation marks omitted.) *Ignacio* v. *Montana-Ignacio*, 57 Conn. App. 647, 648, 750 A.2d 491 (2000).

I

The defendant first claims that the court improperly denied his posttrial motions to set aside the verdict, for a new trial and for permission to file a motion for a new trial on the ground of newly discovered evidence.[7] We disagree.

"[A] party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result. . . . *Turner* v. *Scanlon*, 146 Conn. 149, 163, 148 A.2d 334 (1959)." (Internal quotation marks omitted.) *In re James L.*, 55 Conn. App. 336, 345, 738 A.2d 749, cert. denied, 252 Conn. 907, 743 A.2d 618 (1999).

In the present case, we conclude that the court did not abuse its discretion when it denied the defendant's posttrial motions on the ground of newly discovered evidence. At the October 9, 1998 hearing, the court observed that neither the checks nor the witness whose testimony was proffered by the defendant were present in the courtroom, and that the defendant's offer of proof, unaccompanied by sworn testimony, did not carry the weight of evidence.[8] At the October 20, 1998

---

[7] In his brief, the defendant claims that the court improperly denied his posttrial motions (1) on the ground of newly discovered evidence and (2) on the ground of fraud. We address the two claims separately, as presented by the defendant, rather than as a single claim that the court improperly denied his posttrial motions on the ground of newly discovered evidence of the plaintiff's fraud.

[8] The defendant also concedes in his brief that the checks, as well as various records relating to the plaintiff's divorce proceedings, were marked for identification only at the October hearings. The lack of evidence to

hearing, the court further observed that the defendant had been given an opportunity to present "any and all evidence and arguments to buttress [his] position" at the earlier hearing and that in the absence of such evidence, the court would make its determination on "that which transpired up to the time of trial." Thereafter, in explaining its reasons for denying the defendant's motion, the court stated that "the attorney for the defendant . . . has produced offers of proof, offered theories, offered beliefs, and a great deal of these theories and offers of proof and beliefs amount to really speculation because the court has received no evidence on all that is claimed . . . ."

The court also reasoned that the checks and the testimony proffered by the defendant could have been discovered much earlier and produced at trial had he exercised due diligence.[9] The court thus concluded that "with regard to the presentation of such evidence . . . which was . . . presented . . . only by way of argument, the court will find that it is tardy and doesn't fit the parameters of after-discovered evidence because all this ought to have been discovered months, if not years ago . . . ."[10] The court then denied the October

support the defendant's claim was even more emphatically established when the defendant requested a one week continuance while he waited to receive additional checks allegedly drawn on the Gagges' bank account.

[9] During an exchange between the court and the defendant's attorney at the October 9, 1998 hearing, the court indicated that discovery of the checks "ought to have been done somewhere between the bringing of this action, which has a return date of February 15, 1994, and the trial of the case, which took place in [March] of 1998."

[10] We note that the court rendered its decision orally yet failed to sign the transcript of the decision in contravention of Practice Book (1998 Rev.) § 64-1 (a), which provides that if the decision of the court is presented orally, "the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office." The parties agreed, however, to request that the judge sign the transcript and permit its filing with this court. The court, *Celotto, J.*, subsequently rendered judgment on June 18, 1999.

20, 1998 motion for permission with no further explanation.[11]

Making every reasonable presumption in favor of the trial court's ruling, we are persuaded by the record that the court properly determined that the defendant did not present the court with any newly discovered evidence, and did not exercise due diligence in discovering and producing the alleged evidence at trial. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's posttrial motions on the ground of newly discovered evidence.

## II

The defendant next claims that the court improperly denied his posttrial motions to set aside the verdict, for a new trial and for permission to file a motion for a new trial for "reasonable cause," namely, that the plaintiff had perpetrated fraud on the court and on the defendant in connection with her damages claim. The defendant argues that during the trial, the plaintiff provided a poorly substantiated and highly inflated estimate of her income prior to the accident and that contrary to her claim, the posttrial proceedings are replete with evidence that she was able to continue working after the accident and achieve significant earnings. We disagree.

General Statutes § 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . or for other reasonable cause . . . ." "Other reasonable cause" includes "every cause for which a court of equity could grant a new trial, such as, for example, fraud, accident and mistake." (Internal quotation marks omitted.) *Jenkins* v. *Bishop Apart-*

---

[11] The denial followed a discussion wherein the court stated that it wanted to give everyone an opportunity to make a record and do "whatever is necessary" to preserve the interests of their respective clients.

*ments, Inc.,* 144 Conn. 389, 391, 132 A.2d 573 (1957). "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." (Internal quotation marks omitted.) *Billington* v. *Billington,* 220 Conn. 212, 217, 595 A.2d 1377 (1991).

The defendant's claim that the current record establishes that the plaintiff perpetrated a fraud on the court, the jury and the defendant in connection with her damages claim is misguided. Although the defendant asserts that the posttrial motions and proceedings contain "evidence" indicating that the plaintiff's earnings and earning capacity following the accident were not severely diminished, the court denied the defendant's motion for a new trial on the ground of fraud precisely *because* he did not offer into evidence the checks and the testimony that would have supported his claim, a point conceded by the defendant himself at the October 9, 1998 hearing. The court thus based its denial of the defendant's motions only on "that which transpired up to the time of trial."

Making every reasonable presumption in favor of the trial court's ruling, we conclude that the court properly found that the defendant failed to provide evidence during the posttrial proceedings that might have supported his claim of fraud. Accordingly, we hold that the court did not abuse its discretion in denying the defendant's posttrial motions insofar as they were based on allegations of fraud.

### III

The defendant finally claims that the court improperly denied his posttrial motions without granting him a full evidentiary hearing on the issue of fraud. We do not agree.

When a court's exercise of discretion depends on disputed factual issues, such as the existence of fraud,

due process requires an evidentiary hearing. *Cromwell Commons Associates* v. *Koziura*, 17 Conn. App. 13, 17, 549 A.2d 677 (1988).

Our review of the record discloses that the court held a hearing on October 9, 1998, six months after the jury rendered its verdict, but that the defendant, by failing to exercise due diligence, was not prepared on that date to introduce the evidence and testimony required to substantiate his claims. Expressing its frustration, the court noted not only that the defendant had failed to produce either the checks or the witness on the date of the hearing, but that such evidence and testimony could have been produced many years earlier, between the return date in February, 1994, and the trial in March, 1998. Responding to the defendant's request for a continuance while he waited to acquire additional evidence, the court also noted in apparent exasperation that "you are telling me now, almost six months after the verdict, that you are looking for something and they're going to send you something, but you don't know what they are sending," and later commented that "we have to have an end to this situation."

We conclude that the court conducted a hearing on October 9, 1998, that the defendant had an opportunity to present the checks and the testimony in support of his claim during the hearing, and that the defendant was precluded from offering the checks and the testimony into evidence at that time only because of his own lack of due diligence. Accordingly, we conclude that the defendant's due process right to an evidentiary hearing was not abridged.

The judgment is affirmed.

In this opinion the other judges concurred.