## STATE OF CONNECTICUT *v.* ROBERT SMITH
### (AC 21427)

Dranginis, Flynn and Bishop, Js.

---

Argued February 28—officially released June 11, 2002

*Arnold V. Amore*, special public defender, for the appellant (defendant).

*Thomas M. DeLillo*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Robert Smith, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit kidnapping in the second degree in violation of General Statutes §§ 53a-94 and 53a-48, and conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-122 (a) (3) and 53a-48. On appeal, the defendant claims that the trial court improperly (1) charged the jury on the conspiracy counts and (2) denied his motion for judg-

ment of acquittal.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 12, 2000, Edward Lepak was working as a salesman at Gale Toyota in Enfield. At approximately 5 p.m., two men entered the showroom and requested to test drive a 1997, black Lexus ES300. Lepak brought the two men to the car and the defendant got into the driver's seat, Lepak sat in the front passenger seat and the other man sat in the rear passenger seat directly behind Lepak. After a few minutes of driving, the defendant stated that he wanted to drive the car on the highway. The car was low on fuel so they returned to the dealership so that Lepak could get a gasoline voucher. Lepak asked the men for an operator's license and the man in the backseat handed Lepak his. Lepak proceeded inside the dealership, made a copy of the license and gave it to his sales manager, John Duran. At that point, Lepak told Duran that he felt uncomfortable taking the two men out on a test drive. Lepak obtained a $10 gasoline voucher and returned to the car.

After putting gasoline into the vehicle, the two men and Lepak took the car onto the highway. The defendant moved into the left lane of the highway and accelerated to approximately seventy to eighty miles per hour. When Lepak told the defendant to slow down and move back to the right lane in order to exit the highway, both men began screaming at him. The men told Lepak that they were taking the car and instructed him to put his

---

[1] In his brief, the defendant also claims that the trial court improperly sentenced him separately as to each conspiracy count. During the pendency of this appeal, the state filed a motion to correct the illegal sentence. The trial court granted the motion and vacated the defendant's sentence for conspiracy to commit larceny in the first degree. The defendant's original sentence for conspiracy to commit kidnapping in the second degree remained in effect. The defendant concedes that this issue was rendered moot by the resentencing and, therefore, we lack subject matter jurisdiction over this claim.

hands on his knees and his head down or they would kill him. The man in the backseat grabbed Lepak about the face and jerked his head back, causing his glasses to fall off. Lepak then felt what he thought was a gun pressed against the back of his head and he was instructed to empty his pockets and place the contents in the glove compartment. Lepak placed cash, an identification card and credit cards into the glove compartment.

When the defendant began to decelerate, Lepak grabbed the car door in an attempt to jump from the car. The defendant told Lepak that the other man would shoot him in the head if he tried to escape again. Eventually, the men allowed Lepak to exit the vehicle and they left him on the side of the southbound lane of Interstate 91. Lepak walked to a truck depot and telephoned his employer and the police.

On January 14, 2000, police located the Lexus parked in front of 160 Marshall Street in Hartford and impounded the vehicle. Because the defendant had been residing at that address since September, 1999, the police added his photograph to a photographic array to be viewed by Lepak. On January 15, 2000, detectives showed Lepak the photographic array and he identified the defendant's photograph as the driver of the Lexus. Based on that identification, an arrest warrant was prepared and executed for the defendant.

Following a jury trial, the defendant was convicted of conspiracy to commit kidnapping in the second degree and conspiracy to commit larceny in the first degree. The court sentenced the defendant separately on the each of the conspiracy counts. The defendant was sentenced to a total effective sentence of twelve years incarceration followed by six years special parole.

The defendant claims that the court's instruction to the jury regarding both counts of conspiracy omitted

essential elements and, therefore, violated his due process rights as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We do not agree.

The defendant's first instructional claim is that the court failed to instruct the jury as to when an agreement must take place in order to enter into a conspiracy. The defendant failed to object to the jury instructions and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[2] or, in the alternative, under the plain error doctrine.[3] We will review this claim under the *Golding* doctrine because the record is adequate for review and the claim that the jury was not instructed on an essential element of an offense is of constitutional magnitude; see *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995); but we conclude that the defendant cannot prevail under the third prong of *Golding* because he has not established that a consti-

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] "[T]he plain error doctrine, which is now codified at Practice Book § 60-5, provides in relevant part: The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 11–12, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

tutional violation clearly exists that clearly deprived him of a fair trial.

"We begin by noting that an improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction. . . . When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Hair,* 68 Conn. App. 695, 705–706, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002). "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Crnkovic,* 68 Conn. App. 757, 767, 793 A.2d 1139, cert. denied, 260 Conn. 925, 797 A.2d 521 (2002).

"To establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation

marks omitted.) *State* v. *Booth*, 250 Conn. 611, 657–58, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

In this case, the court gave a thorough instruction on the elements of conspiracy.[4] The court clearly expressed that the essence of a conspiracy is an agreement to commit a crime intentionally *followed by*

---

[4] The court's instruction to the jury on the conspiracy counts, in relevant part, was as follows: "The essence, but not all the elements of conspiracy, the essence is *a criminal agreement to intentionally commit a crime followed by an overt act in furtherance of that intentional criminal agreement.* Conspiracy may be completed by entering into that criminal agreement and by committing an overt act, which I'll define for you, in furtherance of that criminal agreement by two or more persons even though the underlying crime is never completed.
\* \* \*
"To constitute the crime of conspiracy, the state must prove the following elements beyond a reasonable doubt. One, there was an agreement between the defendant and one or more persons to engage in conduct constituting a crime. . . . *Two, that there was an overt act in furtherance of the subject of the agreement* by any one of those persons who were parties to the agreement. And three, there was an intent on the part of the defendant . . . that conduct constituting a crime be performed.
\* \* \*
"The first element is the agreement between two or more persons. . . . It is sufficient to show that the parties knowingly engaged in a mutual plan to do a criminal act. . . . It is enough if he knows a conspiracy exists or that he creates one and that he is joining with at least one other person in agreement to commit a crime. . . . [T]he first element that the state must prove on conspiracy . . . is that the defendant entered into an agreement with at least one other person to engage in conduct constituting a crime.
\* \* \*
"*An overt act is any step, action or conduct that is taken to achieve or further the objective of the conspiracy. An overt act, therefore, is one that is committed . . . by any member of the conspiracy in an effort to accomplish some objective or purpose of the conspiracy. . . . The overt act must be subsequent, a subsequent independent act that follows the formation of the conspiracy.* . . . Now, if you find that there was an agreement to engage in conduct constituting a crime, and *the agreement was followed by an overt act or acts directed to achieve—to further the objective of the conspiracy,* you must still determine whether the defendant had criminal intent." (Emphasis added.)

an overt act in furtherance of that agreement. Furthermore, the defendant has failed to cite any authority for his assertion that in cases where the court instructs that the necessary overt act must follow the agreement to commit the crime, the court must further instruct the jury, as an essential element of the crime of conspiracy, as to when the agreement had to take place to enter into a conspiracy.

Viewing the court's instructions as a whole, we conclude that it is not reasonably possible that the jury was misled. The jury was properly instructed that the conspirators' agreement to commit the crime must precede the commission of the overt act. The defendant, therefore, has failed to prove that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial, and his claim must fail under the third prong of *Golding*.

The defendant also cannot prevail under the plain error doctrine. As this court has noted, "[p]lain error review is reserved for truly extraordinary situations . . . and is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Clark*, 69 Conn. App. 41, 49, 794 A.2d 541 (2002). On the basis of our thorough review of the record and briefs, we conclude that this situation does not involve any such obvious error and does not invoke any exceptional circumstances warranting plain error review.

The defendant also claims that the court's instruction on the conspiracy to commit larceny count was incomplete in another respect. Specifically, he claims that the court failed to instruct the jury about the defendant's statement to a witness. Likewise, the defendant seeks review of this claim under the *Golding* doctrine or, in

the alternative, the plain error doctrine. We decline to review this claim.

In the days following the incident at Gale Toyota, the defendant traveled to Arizona to pick up Jessica Vasquez, a former girlfriend, who had just been released from jail. While in Vasquez's presence, the defendant made a telephone call in which she heard him say, "[T]ell them stupid guys to get the car from the front of my house." Vasquez testified that the defendant told her he had driven two men to a dealership and that they had stolen a car.

In this claim, the defendant does not, as he did in his previous claim, argue that an essential element of conspiracy was omitted from the court's instruction. Rather, he claims that the jury should have been instructed on how to consider Vasquez's testimony. Specifically, he claims that the trial court's charge was incomplete as it failed to instruct the jury that it must find the defendant's statements, as testified to by Vasquez, to have been made during the conspiracy and not to conceal the conspiracy. As such, the defendant's claim can be more properly viewed as evidentiary in nature rather than constitutional. See *State* v. *Wild*, 43 Conn. App. 458, 467, 684 A.2d 720 (failure of trial court to give limiting instruction as to constancy of accusation testimony is not matter of constitutional magnitude), cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). Because the defendant has failed to demonstrate that this claim is of constitutional magnitude, we decline to afford this claim *Golding* review.

In addition, we conclude that this claim does not involve any obvious error or implicate any of the exceptional circumstances warranting plain error review. Our rules of evidence permit admitting into evidence the inculpatory admissions of a party. Conn. Code Evid. § 8-3 (1); *State* v. *Woodson*, 227 Conn. 1, 15, 629 A.2d

386 (1993). The defendant's argument confuses hearsay statements of a coconspirator with the actual admissions of the defendant himself.

We next turn to the defendant's final claim that the court improperly denied his motion for a judgment of acquittal because the state failed to produce sufficient evidence of an agreement to enter into a conspiracy. We do not agree.

"In reviewing claims of insufficiency of the evidence, an appellate court employs a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Corbin*, 61 Conn. App. 496, 517–18, 765 A.2d 14, cert. granted on other grounds, 256 Conn. 910, 911, 772 A.2d 1124, 1125 (2001).

At the conclusion of the state's case, the defendant moved for a judgment of acquittal on the ground that the state presented insufficient evidence to prove that he had entered into an agreement to engage in criminal activity. In denying the motion, the court stated that

"considering that there were two people who went into the dealership, had discussions, went out for a test drive around the block, came back, had to get a car gas credit slip and then one of the two had to give over his license or a license that was [photocopied] and then they went back on the road, one, according to the testimony, provided the driving and the other provided the threatening, the jury could conclude that while there was no formal agreement, there was a meeting of the minds . . . ."

The defendant claims that the only evidence offered to link him to the conspiracy to commit kidnapping and larceny was the testimony of Vasquez. The defendant asserts that the jury could not have reasonably concluded solely on the basis of Vasquez' testimony that the defendant had entered into an agreement to engage in criminal activity.

"While the state must prove an agreement, the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 799, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

In this case, the jury reasonably could have found from the circumstantial evidence that the defendant entered into an agreement to commit a crime. It could have reasonably found that two men entered the Gale Toyota dealership together on the date of the incident and that Lepak identified the defendant as one of those men. During the test drive, the men made it known to Lepak that they intended to steal the car. While in the

car, the defendant drove while the other man held what Lepak thought was a gun to the back of his head. While there was no direct evidence of an agreement between the defendant and the other man, there was sufficient evidence for the jury to infer by their actions that such an agreement existed. "We cannot speculate, as the [defendant] would have us do, as to how and why the jury arrived at its verdict." (Internal quotation marks omitted.) *State* v. *McCall*, 62 Conn. App. 161, 168, 780 A.2d 134, cert. denied, 258 Conn. 935, 785 A.2d 231, petition dismissed, 258 Conn. 935, 785 A.2d 232 (2001). Furthermore, there was no evidence that either of the men objected to the actions of the other or tried to withdraw from the agreement.

On the basis of our review of the record, we conclude that the evidence was sufficient to sustain the inference that the defendant entered into an agreement to engage in the kind of criminal activity for which he was convicted.

The judgment is affirmed.

In this opinion the other judges concurred.