STATE OF CONNECTICUT *v.* BRUCE FELDER
(AC 25673)

DiPentima, Gruendel and McDonald, Js.

Argued November 30, 2005—officially released May 9, 2006

*David J. Reich*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Bruce Felder, appeals from the judgment of conviction, rendered after a jury trial, of one count of larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and one count of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3). The defendant claims that the trial court improperly (1) limited cross-examination of Officer Paul Cicero of the Hartford police department in violation of the defendant's sixth amendment right to confrontation, (2) instructed the jury on larceny by failing to charge the jury that larceny requires a trespass to the person, (3) upheld the judgment convicting the defendant of larceny in the first degree despite insufficiency of the evidence that the value of the victim's motor vehicle was in excess of $10,000 at the time that it was stolen and (4) denied the defendant's motion for a new trial. We disagree with the defendant and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 16, 2002, Joseph Lewis and Robert Charette, Jr., drove to Hartford in Lewis' 2001 Chevrolet S-10 pickup truck for the purpose of attending an event at the Hartford Civic Center. Once the men arrived in Hartford, they became lost and ended up in the north end of Hartford, where they encountered the defendant while stopped at a traffic light. The defendant pulled Lewis from his vehicle and then took his wallet, money, chain necklace and keys from his person. Charette left the vehicle and fled. The defendant then drove away in the vehicle. Later the next day, the police apprehended the defendant, who was found next to Lewis' vehicle with the keys to the vehicle on his person.

The defendant was charged in count one with robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), in count two with conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3) and 53a-48 (a), in count three with larceny in the first degree in violation of § 53a-122 (a) (3), in count four with larceny in the second degree in violation of § 53a-123 (a) (3) and in count five with assault in the second degree in violation of General Statutes § 53a-60 (a) (2). After trial, the jury returned a verdict of guilty as to the larceny counts, counts three and four, and not guilty as to counts one, two and five. The court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective term of thirty years incarceration. This appeal followed. Additional facts will be set forth as needed.

I

The defendant first claims that the court improperly limited cross-examination of Cicero in violation of the defendant's sixth amendment right to confrontation. The defendant argues that during the hearing on the state's motion in limine, the court ruled that the defendant could not cross-examine Cicero on comments he made in a radio transmission regarding a "half a G car"[1] and his knowledge about the subject, and this prevented

---

[1] Out of the presence of the jury, Cicero testified that when he arrived on the scene to investigate the theft of Lewis' truck, he "saw two Caucasian males wearing racing jackets that totally didn't fit in the area and . . . may have said something like, Oh, it's probably a half a G car." Cicero explained that "[a] half a G car is street slang, which is commonly known and used as parties that either don't have money or need money, they lend out their cars for drugs. . . . And the party that gives them the drugs takes their cars out and usually just drives around, does tasks or commits crimes and then returns their car and then more often than not the cars don't get returned." Cicero further testified that often vehicles lent out in this manner would be reported as stolen. Cicero then testified that in this instance, he made the "half a G" comment "in a joking manner," and that upon hearing from Lewis and Charette how they got into the area, he reached the conclusion that it was not, in fact, a "half a G" car incident.

the defendant from questioning Cicero about the quality of the investigation and the credibility of the assessments Cicero made in the field.

We find the defendant's claim unavailing. We conclude that the defendant acquiesced in the state's motion in limine that limited cross-examination of Cicero as to the issue and that the defendant was not prevented from calling Cicero and questioning him about the quality of the investigation and the credibility of the assessments he made.

The following additional facts are pertinent to the defendant's claim. Prior to trial, the state filed a motion in limine to prohibit, in the presence of the jury, the introduction of evidence or argument regarding drugs or the sale of drugs without a prior ruling by the court. During the hearing on April 1, 2004, the motion was refined to prohibit only any testimony from Cicero regarding his opinion about whether the vehicle in the case at hand was a "half a G" car. The following colloquy then occurred:

"The Court: [Defense counsel], how are you going to get Officer Cicero's opinion into evidence? Just assuming arguendo that your question calls for opinion and then I'll hear you if you think you can fashion a question that doesn't call for an opinion. . . .

"[Defense Counsel]: Actually, I would not ask a question about his opinion.

"The Court: No. I'm going to want you to answer my questions. Then I'll give you, I'll listen to you as long as you want. Assuming that your question calls for an opinion about a half a G car or 1077 related or drug related or whatever opinion the officer expressed on the 911 tape or the police tape, how do you get that in?

"[Defense Counsel]: I don't think I'd ask that question. I don't think I'd pursue that, Your Honor.

"The Court: Very well. . . .

"[Defense Counsel]: What I would like to ask the officer, since he has demonstrated knowledge of it, I'd ask him to define what a half a G car is.

"The Court: On cross-examination.

"[Defense Counsel]: Or call him in on direct.

"The Court: Oh. That's a different story. . . . [I]f [the defendant] is going to take the [witness] stand and testify or you have other witnesses who were going to come and testify that this was a drug transaction, then the car was loaned or temporary possession of the car was transferred for drugs, different kettle of fish. That's fine. You can do that, of course. The state's motion is [that] your cross-examination of Officer Cicero about any statements he made about looks like maybe a drug activity . . . those are all speculation and opinion, I believe, unless you wish to convince me otherwise, and I'm hearing you say you don't.

"[Defense Counsel]: No. That's correct. I don't care to. . . .

"The Court: . . . So, that's the state's motion. Right?

"[The Prosecutor]: Yes, basically precluding any questioning of Officer Cicero, at least in the state's case, respecting half a G car.

"The Court: . . . What else can I do for or to you, [defense counsel]?

"[Defense Counsel]: Well, I would like to call Officer Cicero regarding his knowledge of transactions where vehicles are lent out for purposes of drugs, in exchange for drugs.

"The Court: Oh. You'll need something to connect that. I mean, you certainly can't do it on cross-examination. When it comes time for your case-in-chief, then if

you have the desire to call Officer Cicero as part of some evidence, some actual evidence that this occurred. I mean, I'm not suggesting that you can't ask the victim in this case . . . . You're free, if you have a good faith basis, to ask whether they were there to buy drugs or whether they bought drugs, whether they gave the car for drugs.

"[Defense Counsel]: Yeah.

"The Court: . . . But to use Officer [Cicero] as an expert witness is problematic, and to use him as an opinion is problematic, but what you do in your case-in-chief, we'll deal with later. This motion only goes to cross-examination of Officer Cicero during the state's case-in-chief. Now, that's not to say [that] if [the state] takes leave of [its] senses and starts asking about half a G car on direct . . . unless the questions somehow end up within the scope of direct, I think we're agreed that there is no chance of getting Officer [Cicero's] opinion about drug . . . involvement and I don't . . . see how you're going to get around the scope. Anything else?

"[Defense Counsel]: No, Your Honor."

During the defendant's case on April 5, 2004, the defendant again expressed his intention to call Cicero as a witness and stated that he was "not going to ask [Cicero] about the half a G car." Later, however, the defendant stated that he would not call Cicero as a witness: "I would waive Cicero's appearance. . . . I don't think it's that necessary."

"Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim

of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Tyson*, 86 Conn. App. 607, 612–13, 862 A.2d 363 (2004), cert. denied, 273 Conn. 927, 873 A.2d 1000 (2005); see also *State* v. *Ruffin*, 48 Conn. App. 504, 510, 710 A.2d 1381 ("[o]ur procedure does not allow a defendant to pursue one course of action at trial and later, on appeal, argue that the path he rejected should now be open to him"), cert. denied, 245 Conn. 910, 718 A.2d 18 (1998).

The record shows that after the court expressed interest in the issue and stated that it was willing to hear the defendant's argument, the defendant repeatedly declined the court's invitation, stating instead that he did not intend to question Cicero regarding his opinion about whether the vehicle in the case at hand was a "half a G car" and, in effect, withdrew any objection to the state's motion in limine. By agreeing to the court's ruling on the state's motion in limine, the defendant expressly waived the claim he now pursues on appeal, which is that the court deprived him of his constitutional right to cross-examine Cicero on comments he made in a radio transmission regarding a "half a G car" and his knowledge about the subject. Accordingly, that claim must fail.

Furthermore, the defendant cannot claim now that he was prevented from questioning Cicero because he, himself, chose not to call Cicero as a defense witness. "The term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encour-

aged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal. . . . In *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004), our Supreme Court held that review of induced, unpreserved error is not permissible under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)." (Citation omitted; internal quotation marks omitted.) *State* v. *DiLoreto*, 88 Conn. App. 393, 397–98, 870 A.2d 1095 (2005).

Accordingly, we conclude that the defendant was not prevented from questioning Cicero, as the defendant, himself, chose not to call Cicero as a witness.

## II

The defendant's second claim is that the court improperly instructed the jury as to larceny in the second degree by failing to charge the jury that larceny requires a trespass to the person, an essential element of the crime.[2] The defendant did not file a request to

[2] The court instructed the jury as follows with respect to the charge of larceny: "Our law provides that a person commits larceny when, with intent to deprive another of property, he wrongfully takes such property from another. So, the crime of larceny has the following elements: One, that the defendant wrongfully took property from an owner or took or obtained, withheld property from an owner; and, two, that at the time the defendant obtained such property, he intended to deprive the owner of the property or appropriate such property to himself. Larceny means theft or stealing.

"The first element of larceny is the wrongful taking. Taking means just what it says—the wrongful taking away from the possession or control of the person entitled to the property, whether by force or some other unlawful means. Wrongfully means no legal justification or excuse for the taking, obtaining or withholding property, money, personal property or article of value of any kind. And that's the first element of larceny, which is taking, wrongful taking.

"Second element is whether the defendant is guilty of intending to commit the larceny. The state must prove beyond a reasonable doubt that at the

charge as to larceny in the second degree and failed to take exception to the charge. He now seeks review of this claim under *State* v. *Golding*, supra, 213 Conn. 239–40.[3] We will review his claim under *Golding* because the record is adequate for review, and the claim

time the defendant wrongfully took, obtained or withheld property from an owner, that he intended to deprive the owner of it. And although you might think intent was fairly clear, we do have a definition for intent. We have a statute that says a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or engage in such conduct.

"What a person's intention or purpose or knowledge has been is usually a matter to be determined by inference. No one is able to testify that he looked into another person's mind and saw there a certain intent. The only way in which a jury can determine what a person's purpose or intention was at any given time is by determining what that person's conduct was, or from that person's own statement in testimony, and then, again, look at a person's conduct and what the person's circumstances were surrounding that conduct, and from that conduct infer what that person's intention or purpose was. So, that takes care of the larceny.

"If someone took property honestly, although mistakenly, believing that he had a right to do so, you cannot find that he had the required intent of this element of larceny. So, the state has to prove beyond a reasonable doubt, to justify a conviction, that the defendant had an unlawful purpose or intention in his mind at the time that he took the property."

The court further instructed the jury that larceny in the second degree is based on theft from a person: "Our law provides that a person is guilty of larceny in the second degree when he commits larceny, as defined in our statutes, and the property, regardless of its nature or value, is taken from the person of another. . . . And the definition of the part of larceny second that makes it larceny second, that is, theft [from the] person, is defined as follows: To take property from the person of another means that the item taken was actually on the body or held by or in some manner attached to the person of the victim. So, if somebody, for example, were to take money out of my hand or out of my pocket, that could well be larceny from the person if the other elements were proven. But if the person who takes property from me takes property that is not in my personal possession but in my chambers, that's not taking it from my person. It's larceny if the other elements are proven, but it's not larceny . . . that is, theft, taken from the person of another."

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived

that the jury was not instructed on an essential element of an offense is of constitutional magnitude. We conclude, however, that the defendant cannot prevail under the third prong of *Golding* because he has not established that a constitutional violation clearly exists that clearly deprived him of a fair trial. See *State* v. *Smith*, 70 Conn. App. 393, 397–98, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

"In a criminal case, the state must prove, and the trial court must instruct the jury on, each essential element of the crime charged. . . . A trial court's failure to instruct on any of these elements warrants reversal regardless of whether the defendant objected at trial. . . . It cannot be considered harmless error for a jury to find an accused guilty without even knowing what are the essential elements of the crimes charged. . . . Put another way, the failure to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are. . . . After all, when [the defendant] exercised his constitutional right to a jury, he put the [state] to the burden of proving the elements of the crimes charged to a jury's satisfaction . . . . It is, therefore, constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . A claim that the trial court failed to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of his trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 68–69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972

the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

(2002). Accordingly, the defendant's claim is of constitutional magnitude alleging the violation of a fundamental right.

We turn now to the third prong of *Golding*, which requires the defendant to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40.

General Statutes § 53a-119 defines larceny in relevant part as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

The defendant claims that the court's jury instruction on larceny was deficient and therefore misleading because "[t]here was no instruction that [the defendant] had to take the items against [the victim's] will or to forcefully take them"; in other words, the instruction was missing the element of a trespass to the person. The defendant contends that, consequently, the faulty instruction misled the jury into believing that the defendant voluntarily could have been handed the keys and money by the victim and still be found guilty of larceny.

Our review of the record demonstrates that, on the contrary, the court clearly instructed the jury that larceny is the wrongful taking away from the possession or control of the person, whether by force or some other unlawful means. The court further defined "wrongfully" to mean without legal justification or excuse. The court unambiguously expressed the essence of larceny when it said that it involves "theft [from] a person" and that "[t]o take property from the person of another means that the item taken was actually on the body or held by or in some manner attached to the person of the victim."

Viewing the court's charge on larceny in the second degree in its entirety, we conclude that it is not reasonably possible that the jury was misled. The court closely followed the language of § 53a-123 (a) (3) in explaining the meaning of "taking property from the person of another." Wrongfully taking property from the person of another constitutes a trespass of the person, and such a taking from the person constitutes larceny in the second degree. *State* v. *Crowe*, 174 Conn. 129, 134, 384 A.2d 340 (1977). We conclude that the jury properly was instructed on the elements of larceny in the second degree. The defendant, therefore, has failed to prove that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial, and his claim must fail under the third prong of *Golding*.

### III

The defendant next claims that the court improperly upheld the judgment convicting the defendant of larceny in the first degree despite insufficiency of the evidence that the value of the victim's motor vehicle was in excess of $10,000 at the time that it was stolen. We cannot agree.

During trial, the state presented Lewis' testimony that he had purchased the truck in May, 2002, approximately three months prior to the theft, for $22,500. Lewis further testified under cross-examination that $22,500 was the sticker price of the vehicle when he purchased it.

Section 53a-122 (a) provides in relevant part that "[a] person is guilty of larceny in the first degree when he commits larceny . . . and . . . (3) the property consists of a motor vehicle, the value of which exceeds $10,000 . . . ." "Our Penal Code defines value of property as the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the

crime. . . . General Statutes § 53a-121 (a) (1). Market value has been defined as the price that would in all probability . . . result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." (Internal quotation marks omitted.) *State* v. *Browne*, 84 Conn. App. 351, 387, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

"The law in Connecticut is well settled as to the competency of the owner of property to testify as to its value. . . . [T]he competence of a witness to testify to the value of property may be established by demonstrating that the witness owns the property in question. . . . The rule establishing an owner's competence to testify reflects both the difficulty of producing other witnesses having any knowledge upon which to base an opinion especially where the stolen items are never recovered . . . and the common experience that an owner is familiar with her property and knows what it is worth. . . .

"It is difficult, however, to conceive of an owner having an innate concept of value simply by virtue of ownership. An owner must of necessity rely on other sources for his knowledge of value. Thus, [t]he owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy." (Citation omitted; internal quotation marks omitted.) Id., 387–88.

"The trier of fact determines the value of property. . . . A reviewing court will not disturb the trier's determination if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) Id., 388.

"The test is whether the evidence was sufficient for the jury reasonably to conclude on the facts established and the reasonable inferences drawn therefrom that the cumulative value of the evidence was sufficient to justify a guilty verdict." Id., 389. We conclude that it was. Lewis' testimony with regard to the value of his vehicle was sufficient to satisfy the statutory element that the value of the motor vehicle was in excess of $10,000, and Lewis was competent to testify as to the value of his property.

## IV

The defendant's final claim is that the court improperly denied his motion for a new trial. We disagree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . [W]e do not . . . determine whether a conclusion different from the one reached could have been reached." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Fracasso*, 59 Conn. App. 291, 295, 756 A.2d 325 (2000).

The defendant argues that the court's denial of his motion for a new trial should be reversed because the evidence did not support the finding that Lewis and Charette were robbed by the defendant and, thus, " 'injustice appears to have been done.' " The defendant now raises on appeal arguments regarding his version of events as testified about at trial, which version was at variance with the testimony of Lewis and Charette. Specifically, the defendant argues that the testimony of

Lewis and Charette "does not make sense" and that if his testimony was considered, it would not have been possible for the jury to have returned the verdict that it did.

"We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

These are arguments that the defendant properly raised at trial, and they were properly before the jury, but they are not the proper subject of an appeal.

The judgment is affirmed.

In this opinion the other judges concurred.