# STATE OF CONNECTICUT *v.* PELINO S. DILORETO
## (AC 24506)

Foti, West and McDonald, Js.

Argued October 26, 2004—officially released April 12, 2005

*Alexander Aponte*, with whom, on the brief, was *Richard S. Cramer*, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Mary Rose Palmese*, supervisory assistant state's attorney, and *William J. Watson III*, former assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Pelino S. DiLoreto, appeals from the judgment of conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1),[1] rendered following a trial to the jury, and of being a repeat offender, as alleged in a part B information, following a trial to the court. On appeal, the defendant claims that the trial court improperly (1) excluded defense testimony and (2) denied his motion to dismiss

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if such person operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a . . . (1) while under the influence of intoxicating liquor . . . ."

the part B information. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Shortly before 10 p.m. on March 29, 2002, as he approached the intersection of Goff Road and Bittersweet Hill Road with Prospect Street in Wethersfield, the defendant drove his pickup truck off the road, through a shallow ravine and into a hedge of arborvitae on the property of David Sturgess. The truck knocked down one of the trees. The defendant attempted to leave the scene, but his truck was caught on the broken tree trunk. While trying to free his vehicle, the defendant yelled profanities at Sturgess.

At 9:52 p.m., Officer Albert Whaples of the Wethersfield police department arrived, approached the pickup truck, and asked the defendant to turn off the engine and exit the vehicle. The defendant complied with the officer's request but had difficulty getting out of the truck and required some assistance. He was unsteady on his feet once out of the vehicle. Whaples remained close to the defendant because he did not want him to fall and detected the strong odor of alcohol. Eventually the defendant admitted to Whaples that he had consumed alcohol, some beer or wine, earlier in the evening. Whaples helped the defendant up the slight embankment to the street in order to perform field sobriety tests. In Whaples' opinion, on the basis of his training with respect to administering the tests and his observations, the defendant failed the sobriety tests. At 10 p.m., after observing the defendant's failure to perform the sobriety tests, Whaples arrested him. Whaples then brought the defendant to the police department, where the defendant was videotaped. The videotape showed that he was intoxicated.

I

The defendant claims that the court improperly excluded the testimony of Mary Tracey, a defense wit-

ness, and that this ruling violated his rights under the sixth amendment to present a defense and to confront and to cross-examine a witness. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. Before the state presented its case, the defendant asked the court to prohibit lay witnesses from giving an opinion about his intoxication. The court indicated that it tended to agree with the defendant but reserved a ruling until the evidence was presented. During the state's case, Sturgess, a lay witness, testified that he had observed the defendant after the defendant had driven into the hedge in his yard. He also testified that he thought the defendant was intoxicated. The defendant objected, and the court struck Sturgess' conclusion, instructing that it be disregarded by the jury.

During his case, the defendant attempted to offer Tracey's testimony as to his intoxication on the evening of March 29, 2002. The defendant presented evidence that on March 29, 2002, he and his sister ate dinner at the Chowder Pot restaurant in Hartford. They arrived at the restaurant around 7 p.m. but did not sit down to eat for another forty-five minutes. The defendant testified that he had had one or two beers with dinner. He also testified that at about 9 p.m., as he was leaving the restaurant, he met Tracey, someone he had worked with in various political campaigns during the early 1990s. Tracey then testified that the defendant had exhibited no unusual behavior when she saw him at about 8:30 p.m. and seemed "fine" when he walked. Tracey also testified that the defendant was not drunk. When the state objected to that conclusion, citing the court's prior ruling as to Sturgess, the defendant argued that Tracey's opinion was admissible because as a part-time bartender for twenty-two years, she had "specialized knowledge" about intoxication. The court sustained the state's objection and struck the testimony.

We must set forth the standard governing our review of the defendant's evidentiary claim. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Our review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999).

On appeal, the defendant argues that the court should have admitted Tracey's opinion as that of either a lay witness or an expert witness. Our Supreme Court has stated that "[t]he condition of intoxication and its common accompaniments are a matter of general knowledge. . . . [The question of intoxication] is not a matter of opinion, any more than questions of distance, size, color, weight, identity, age, and many other similar matters are." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 124 Conn. 664, 667–68, 2 A.2d 374 (1938). Under Connecticut law, "the statement that a person is intoxicated is not so much the expression of an opinion as it is the statement of a conclusion drawn from observation." *D'Amato* v. *Johnston*, 140 Conn. 54, 58, 97 A.2d 893 (1953).

We conclude that the defendant cannot now claim that the court improperly excluded Tracey's lay conclusion because he induced the court to exclude Sturgess' lay testimony that the defendant was intoxicated and because the defendant failed to make that claim at trial. "The term induced error, or invited error, has been

defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Gibson*, 270 Conn. 55, 66–67, 850 A.2d 1040 (2004). In *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004), our Supreme Court held that review of induced, unpreserved error is not permissible under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The defendant also argues that Tracey, as a part-time bartender for twenty-two years, was an expert on matters of intoxication. "[T]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 74, 770 A.2d 908 (2001). To qualify Tracey as an expert on the matter of intoxication, the defendant was required to demonstrate that she had the "special skill or knowledge directly applicable to a matter in issue . . . that [her] skill or knowledge is not common to the average person, and [that her] testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Lamme*, 19 Conn. App. 594, 603, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). After examining the record, we conclude that the defendant failed to present any evidence that Tracey had or claimed to have any specialized knowl-

edge, training or experience not common to the average person as to judging a person's intoxication. That Tracey had observed "many" drunks in her years as a part-time bartender does not support a finding that she had expertise beyond common knowledge. The court did not abuse its discretion in determining that Tracey did not qualify as an expert witness.

## II

The defendant claims a violation of his sixth amendment right to counsel under the United States constitution as to his 1998 conviction that was set forth in the part B information.[2] He claims that the court improperly denied his motion to dismiss the second part of the information on that ground. We disagree.

The following facts and procedural history are relevant to our resolution of the defendant's claim. Part B of the information charged the defendant with having been convicted of operating a motor vehicle while under the influence of intoxicating liquor in 1998. Before trial, the defendant filed a motion to dismiss that part of the information because he did not have the assistance of counsel at the time of his 1998 guilty plea. The court denied the motion and found him guilty as to part B of the information.[3] On August 7, 2003, the court sentenced the defendant to two years incarceration, execution suspended after 120 days, and three years of probation.

At the hearing on the motion to dismiss, the parties presented to the court a transcript of the defendant's 1998 plea. The state also brought to the court's attention the court record of the 1998 case, and the defendant

[2] The defendant makes no claim under our state constitution and presents no argument in support of such a state constitutional claim. Because "[t]he defendant has not provided a separate analysis under state constitutional law . . . we will apply only the traditional federal constitutional analysis to his claim." *State* v. *DePastino*, 228 Conn. 552, 571, 638 A.2d 578 (1994).

[3] The defendant waived his right to a jury trial as to the part B information.

directly addressed the court. Thereafter, the court found that the defendant knew from his appearances in court that he had a right to counsel and that he in fact did have counsel. That counsel later was allowed to withdraw. The court found that when the defendant entered his plea, he had been coming to court for six months, had complained that the case was "dragging on" and that at one time, his attorney had to participate in a trial elsewhere. The court also found that the defendant could have waited for new counsel, but that he wanted to learn what the judge would suggest. He wanted to dispose of his case without further delay. The court concluded that the defendant knowingly had waived his right to counsel at the time of his plea.

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 229–30, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *Iowa* v. *Tovar*, 541 U.S. 77, 87, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004). "[T]he Sixth Amendment right to the assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help"; (internal quotation marks omitted) *Faretta* v. *California*, 422 U.S. 806, 814, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); so that "[a] person accused of crime . . . may choose to forgo representation. While

the Constitution does not force a lawyer upon a defendant . . . it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent . . . ." (Citations omitted; internal quotation marks omitted.) *Iowa* v. *Tovar*, supra, 87–88. *Tovar* concerned the validity of using a prior conviction of operating a motor vehicle under the influence of alcohol, which Iowa statutory law classifies as a "serious misdemeanor," to enhance a third such offense to the status of a felony. Id., 85. The first guilty plea that the defendant had entered in *Tovar* occurred when he was not represented by counsel; id., 84; and the issue in the case was whether, beyond affording the defendant the opportunity to consult with counsel prior to the entry of a plea and to be assisted by counsel at the plea hearing, the trial court must specifically advise the defendant that the waiver of counsel entails "the risk that a viable defense will be overlooked [and that] by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether . . . it is wise to plead guilty." (Internal quotation marks omitted.) Id., 87. The United States Supreme Court held that the "constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishment attendant upon the entry of a guilty plea." Id., 81. *Tovar* also holds that a constitutional waiver of counsel depends in each case on the particular facts and circumstances of that case. Id., 93.

The defendant argues on appeal that he was not informed of his right to be counseled regarding his plea when he entered his 1998 guilty plea. The history of that plea supports the court's findings and conclusions that he had been informed previously of his right to counsel and had exercised that right. The 1998 plea transcript reveals that the defendant had been admitted

into the alcohol education program, but it was later found that he was ineligible because, in the past, he had invoked the program. When his plea was entered, the defendant told the court that his case was "dragging and dragging" when he had an attorney, that he had been coming to court for the last six months and that at one time, the attorney had to participate in a trial elsewhere. The defendant indicated that he wanted to learn what the judge would suggest and, in reference to having to repeatedly come to court, told the court that he did not "like the time over here all the time."

The transcript also shows that before the defendant entered his plea on April 21, 1998, and after he stated that he had the funds to pay a fine, the court indicated that it would suspend any jail sentence and order him to perform community service. The defendant stated that he was sixty-four years old and was scheduled to be tried in Florida on April 28, 1998, on a charge of attempt to commit murder, but that he was willing to do community service. After his guilty plea, the defendant was canvassed and admitted to the fact that on June 25, 1997, he had had three or four drinks and then was involved in an accident when a motor vehicle backed out of a driveway into the path of his car. The results of a breath test taken by the defendant after the accident revealed blood alcohol levels of .178 and .164, a prohibited elevated blood alcohol content. See General Statutes (Rev. to 1997) § 14-227a (a) (2). The court thereafter imposed a suspended sentence of 100 hours of community service while the defendant was on probation for one year. The court then inquired how long the defendant would be in Florida. The defendant replied that it depended on the length of the trial. After it developed that the defendant did not have the funds to pay a fine, the prosecutor suggested adding fifty hours of community service in lieu of a fine. At that point, the defendant inquired if he should get an attor-

ney because he would be in Florida, where he had "a lot of matters to straighten out." The court replied that it would remit the fine, add fifty hours of community service and extend the probation period to eighteen months. The defendant agreed to the additional community service, and that was the sentence finally imposed.

The court record of the prior case reflects that the defendant had counsel after his initial arraignment in July, 1997, when he was advised of his rights.[4] On September 5, 1997, the defendant entered a plea of not guilty. According to the record, the defendant's counsel withdrew on April 20, 1998, when the defendant withdrew his not guilty plea, and filed a sworn and erroneous application for the alcohol education program. The application was granted in April, 1998, after the defendant had paid a total of $475 in fees. He later returned to court to enter a plea and proceed to trial.[5]

The defendant also addressed the court at the dismissal hearing. He stated that the prosecutor in 1998 had suggested he pay a $400 or $500 fine and go home. The reason that the defendant dismissed his attorney was because he paid that money. Two to three weeks later, however, he was called to go in front of the judge.

We conclude that the record shows that the defendant knew of his right to counsel, the advantages of hiring counsel, and the disadvantages of proceeding without counsel when he hired counsel and before he appeared

[4] General Statutes § 54-1b provides: "Any accused, when he is arraigned before the Superior Court, shall be advised by a judge that he has a right to counsel, that he has a right to refuse to make any statement and that any statement he makes may be introduced in evidence against him. Each such person shall be allowed a reasonable opportunity to consult counsel."

[5] An application for the pretrial alcohol education system may be granted to individuals who swear that they have not previously invoked such system. Upon the completion of the process, the defendant may apply for dismissal of the charges. See *State* v. *Descoteaux*, 200 Conn. 102, 107, 509 A.2d 1035 (1986). If, however, the defendant is found to be ineligible, he must return to court. General Statutes § 54-56g.

without counsel to plea bargain with the prosecutor for a suspended sentence, a remitted fine and community service in 1998. The defendant was sixty-four years old and no stranger to the criminal justice system. See *Iowa v. Tovar*, supra, 541 U.S. 77. As in *Tovar*, the defendant does not claim that he did not fully understand the charge or the range of punishment for the crime prior to entering a plea of guilty. Further, he has not offered any information counsel could have provided, given the simplicity of the charge, nor does he assert that he was unaware of his right to counsel prior to and at his arraignment. See id., 93. His waiver of counsel is valid because at that time, the defendant knew what he was doing and made his choice with his eyes open. See id., 90–91. In those circumstances, *Tovar* does not require, pursuant to the sixth amendment, specific warnings about the dangers of entering a plea without the assistance of counsel. Id., 93. Accordingly, we reject the defendant's sixth amendment claim and uphold the denial of the motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.