STATE OF CONNECTICUT *v.* MICHAEL E. BROWN
(AC 26174)

Bishop, McLachlan and Foti, Js.

Argued April 18—officially released July 25, 2006

*William M. Bloss*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anthony Bochicchio*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Michael E. Brown, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), unlawful restraint in the first degree in violation of General Statutes § 53a-95, threatening in the second degree in violation of General Statutes § 53a-62, assault in the third degree in violation of General Statutes § 53a-61 and breach of the peace in the second degree in violation of General Statutes § 53a-181. On appeal, the defendant claims that he was denied his right to due process because the court failed to voir dire the jury adequately after an allegation of juror bias. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issue on appeal. The defendant was arrested and charged in connection with an incident that occurred on the evening of September 20, 2002. The defendant entered pleas of not guilty and elected a jury trial. The evidentiary portion of the trial commenced on September 20, 2004, and the court delivered its final instructions to the jury on September 23, 2004. On September 24, 2004, the day the jury was due to begin its deliberations, a judicial marshal informed the court that he had overheard two jurors, C and S,[1] discussing an encounter

---

[1] To protect the identity of the jurors, we refer to them by the initials C and S. See *State v. Newsome*, 238 Conn. 588, 624 n.12, 682 A.2d 972 (1996).

juror C had had with the defendant the day before, in which juror C alleged that the defendant had followed her home. The court informed counsel that it would address the issue of potential jury bias by questioning each of the jurors individually about the incident, asking them "how it has affected them, whether or not it will affect their ability to be impartial . . . whether or not they feel they can still be impartial in their deliberations and whether or not any of whatever has affected either individual jurors or the group will influence them in any way." Upon the request of defense counsel, the court also agreed to allow counsel to suggest additional questions for the court to ask each individual juror. The court, however, did not accede to defense counsel's suggestion that the marshal should also be questioned and that the jurors should be questioned as to how the information had been conveyed to them.

The court began its canvass with juror C, who testified that on the previous day, after the court had adjourned, the defendant, his counsel and the jurors departed the courthouse in their vehicles at the same time, in the manner of a vehicular caravan. She stated that while the order of the cars changed as they drove and changed lanes, the defendant remained behind her car, and that juror S was behind the defendant and was "watching what happened." Juror C testified that the defendant's car remained behind hers while she exited the parking lot and drove on the highway. She also stated that when she changed lanes, the defendant changed lanes with her. She stated that she was very aware of the defendant's presence and that she felt very uncomfortable. Juror C testified that when she arrived at the courthouse on the next day, the day of the canvass, juror S asked her if she was "freaked out about what happened . . . ." She testified that she and juror S then discussed the incident. When asked by the court whether the incident would affect her ability to be fair

and impartial, juror C replied: "I don't think it would affect me to be impartial. It's based on the facts. . . . I can't say that at 100 percent." The court then temporarily excused the juror and asked counsel if they had any additional questions. Both counsel responded that they had no further questions.

When the court canvassed juror S, she acknowledged that she had discussed the incident with juror C and testified that she thought "it was kind of bizarre that . . . the jury would be let out at the same time as . . . the defendant." She stated that she did not think that it "was a very good process . . . ." When asked if, despite the incident, she would be able to be fair and impartial, she responded in the affirmative. The court temporarily excused the juror and inquired as to whether either counsel had additional questions. Both replied that they did not.

The court then canvassed the remaining members of the jury panel and the alternate jurors. Although all members of the jury and the alternates appeared to be aware of the incident, when asked by the judge if the incident would affect their ability to be fair and impartial, each replied that it would not. After its preliminary questions to each individual juror and alternate, the court asked counsel if there were any additional questions counsel would like the court to ask. As requested by counsel, any additional questions were then posed to some of the jurors individually by the court before each was excused.

After all the jurors and alternates were canvassed, the court asked counsel if "anyone wish[ed] to be heard." Defense counsel requested a ten minute recess to consider what to "ask for if anything," and the court granted the recess. After the recess, the court stated: "The court . . . has conducted an in chambers conference with counsel and, based on the testimony that was received in the polling of each of the jurors, it is the court's

decision to excuse [juror C]. . . . And then of course, the court would further instruct the jurors as to the fact that nothing outside of the courtroom can be considered in their deliberations."

Defense counsel then moved for a mistrial on the ground that that the entire jury panel had been tainted by the incident. Specifically, defense counsel took issue with juror S, stating that the juror "must have thought that [the incident] was more than mere coincidence . . . ." Counsel continued: "[A]lthough I stated [that] I didn't have any more questions that I wanted the court to ask her, maybe that is something the court should ask, whether or not she thought it was more than mere coincidence. Because if you thought it was more than mere—less than coincidence, why would you bring it up with someone?" The court denied the motion for a mistrial, stating that it had "no indication from [juror S] that [the incident] was affecting her." Indeed, the court found that juror S's comments suggested that she took issue only with the timing and manner in which the court dismissed the jurors.

The court then selected an alternate juror through a lottery process and instructed the jury that "nothing that happens outside of this courtroom may be permitted, may be used in your deliberations or your consideration of this case." The jury deliberated and found the defendant guilty on all charges. This appeal followed.

The sole issue for our review is whether the court failed to voir dire the jury adequately to determine the existence of juror bias.[2]

We first set forth the principles that guide our review of the defendant's claim. "To ensure that the jury will decide the case free from external influences that might

[2] The defendant also claims that because the jury was tainted by the incident, the court improperly denied his motion for a mistrial. Because the record does not support the defendant's claim that the jury was tainted, we do not reach his subordinate claim that the court should have declared a mistrial.

interfere with the exercise of deliberate and unbiased judgment . . . a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality. . . .

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations [or the possibility] of jury [bias or] misconduct will necessarily be fact specific. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged [or possible] jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate [the possibility] of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. . . .

"[A] trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations [or the possibility] of jury misconduct [or bias]: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. . . .

"Consequently, the trial court has wide latitude in fashioning the proper response to allegations [or the

possibility] of juror bias. . . . [W]hen . . . the trial court is in no way responsible for the [possible] juror misconduct [or bias], the defendant bears the burden of proving that the misconduct [or bias] actually occurred and resulted in actual prejudice. . . .

"[W]here the defendant claims that the court failed to conduct an adequate inquiry into possible juror bias or prejudice, the defendant bears the burden of proving that such bias or prejudice existed, and he also bears the burden of establishing the prejudicial impact thereof." (Citations omitted; internal quotation marks omitted.) *State* v. *Sinvil*, 90 Conn. App. 226, 240–41, 876 A.2d 1237, cert. denied, 275 Conn. 924, 883 A.2d 1251 (2005).

In this instance, our review of the record leads us to the conclusion that the court's voir dire was adequate. Additionally, the record does not support the defendant's claim that the jury had become tainted by knowledge of the incident involving the defendant and some of the jurors. Consequently, the defendant has not shown that he was harmed by juror bias. The record reflects that defense counsel was given, and availed himself of, the opportunity to interject additional questions to the jury during the court's voir dire, and that the answers given to these questions by the jurors and alternates who were not excused from the case do not demonstrate bias against the defendant. Indeed, the answers elicited from the jury during the court's inquiry provided the court with ample basis for its decision regarding the continuing fitness of the remaining jurors and alternates. Our review of the record convinces us that the court properly determined that juror C was the only juror who should be excused from the panel. In sum, in dismissing juror C while retaining the other jurors and alternates, the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.