STATE OF CONNECTICUT *v.* CLIFTON OWENS
(AC 26670)

Flynn, C. J., and Bishop and Harper, Js.

Argued October 23, 2006—officially released April 17, 2007

*Cyd O. Oppenheimer*, special public defender, with whom were *George G. Kouros*, special public defender, and, on the brief, *Richard A. Reeve* and *Michael O. Sheehan*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence Mariani*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Clifton Owens, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes § 53a-49 (a) (2) and 53a-54a, and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) the trial court improperly instructed the jury as to intoxication, (2) the court failed to conduct an adequate inquiry into an allegation of juror misconduct, (3) the court improperly instructed the jury regarding the charges of attempt to commit murder and reckless assault in the first degree and (4) the evidence was insufficient to sustain his conviction of risk of injury to a child. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts.

The defendant and one of the victims, S,[1] had known each other for twenty-seven years on the day of the incident in question. Additionally, for approximately one and one-half years preceding April 1, 2003, S took care of the defendant's daughter every weekday while the defendant was at work.

On the evening of April 1, 2003, around 5 p.m., the defendant had finished work and arrived at S's residence to pick up his daughter. Upon arrival, S explained that she was "totally worn out physically, mentally, emotionally and spiritually" and told the defendant that she would not be able to take care of his daughter any longer. After a twenty minute argument, the defendant left and proceeded to his residence and testified to having "two tall glasses of rum and Coke." The defendant returned to S's residence around 7:45 p.m. He appeared to be very upset and was "ranting and raving." He then left but returned again around 10:20 p.m.

After arguing with the defendant and observing that he was starting to get very upset, S asked the defendant to leave. In response, the defendant struck S on her right temple causing her to lose consciousness. He then stabbed S with a knife in the arm and throat area, lacerating her trachea.

Hearing the loud commotion from her bedroom, S's twelve year old daughter, the victim C, ran into the kitchen to ascertain what was occurring. When she arrived, she observed that her mother was curled up in a ball with her knees to her chest and her arms over the top of her head, and the defendant was standing next to her "yelling and screaming at her." C told the defendant to leave her mother alone. This prompted

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

the defendant to turn toward C. He yelled at her to "get the fuck out of here" and then "chased" her by running two or three steps toward her "with a knife in his hand," causing her to retreat to her bedroom.

In the meantime, Minerva Contreras, who lived in the basement and who also had heard the loud commotion, came upstairs. Contreras first saw C, who told her to be careful because the defendant had chased her with a knife. She then saw the defendant walking back toward the kitchen and decided to follow him. She observed S lying on the floor and the defendant standing over her with a knife in his hand. Contreras said something to the defendant that caused him to turn around and drop the knife. He then kicked S in the chest and departed from the residence.

Approximately twenty-five minutes after having left S's residence, the defendant entered the Naugatuck police department and announced that he "has just killed someone in Waterbury." Later, the defendant provided a sworn statement[2] that stated in relevant part that "earlier that evening he went to a friend's house and subsequently got into an argument with that friend, female friend that he had known for a long, long time. And the argument turned violent on his part and that he started hitting this female. And then it occurred in the kitchen area, so he reached into a drawer and took out a knife and proceeded to stab the female with the knife."

After the jury found the defendant guilty of attempt to commit murder and risk of injury to a child, the court sentenced him to a total effective term of imprisonment of twenty-five years.[3] This appeal followed. Additional facts will be set forth as necessary.

---

[2] The defendant's voluntary sworn statement was admitted as a full exhibit and read to the jury at his trial.

[3] The court sentenced the defendant to eighteen years imprisonment for attempt to commit murder and seven years for risk of injury to a child, to be served consecutively.

I

The defendant first claims that the court improperly instructed the jury on intoxication. Specifically, the defendant argues that the court's instruction on intoxication was so ambiguous and confusing that it impermissibly burdened his constitutional right to the presumption of innocence and lowered the state's burden of proof. The defendant concedes that this claim is unpreserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] The state responds that if the instruction was incorrect, the defendant induced or waived any error and, therefore, cannot prevail on this claim. We agree with the state.

The following additional facts are pertinent to the defendant's claim. In the defendant's voluntary confession, given to the police on April 1, 2003, he suggested that he had been drinking alcoholic beverages prior to arriving at S's residence. Consequently, as part of the defendant's written request to charge, the defendant asked for an instruction on intoxication. After the parties made their closing arguments to the jury, the court gave the jurors final instructions, including an instruction on intoxication as framed by the defendant.[5]

---

[4] "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 181 n.6, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

[5] Accordingly, the defendant made no objection after the court instructed the jury on intoxication, utilizing the precise language he requested.

Upon review of the record, we conclude that the defendant is precluded from claiming that the court improperly instructed the jury as to intoxication. Here, the defendant's request to charge on intoxication included the specific language to which he now objects. Even if there was error,[6] it was induced, and, therefore, having induced the claimed error, the defendant cannot obtain *Golding* review of the unpreserved claim.

"The term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *DiLoreto*, 88 Conn. App. 393, 397–98, 870 A.2d 1095 (2005). Moreover, our Supreme Court has held that *Golding* review will not be afforded in cases of induced error. See *State* v. *Cruz*, 269 Conn. 97, 107, 848 A.2d 445 (2004) ("the defendant is not entitled to review of his claim of induced impropriety [under *Golding*] because he requested the very instruction that he now challenges"); see also *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005) ("[a] defendant

[6] Although we conclude that this claim of induced error is not subject to review on appeal, we further note that the challenged instructions were proper and in accordance with General Statutes § 53a-7, which provides in relevant part: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . ." Moreover, the challenged language can be found in instructions approved by our Supreme Court. See *State* v. *Faria*, 254 Conn. 613, 634–35, 758 A.2d 348 (2000); *State* v. *Ortiz*, 217 Conn. 648, 663, 588 A.2d 127 (1991).

may not present unpreserved claims of relief from induced error because review of induced error is not permissible under *Golding*"). Accordingly, we will not review this claim.

## II

Next, the defendant claims that the court committed reversible error by failing to conduct an adequate inquiry after being presented with evidence of potential juror misconduct. We disagree.

The following additional facts are pertinent to our resolution of the defendant's claim. The jury commenced deliberations, after final instructions, on February 7, 2005. Near the conclusion of the proceedings for that day, the jury sent a note to the court requesting the playback of portions of the recorded testimony from four witnesses. Because of the lateness of the hour at the time of this request, the court informed the jurors to return the following day at 2 p.m., at which point the requested testimony would be ready for them to hear. The court instructed the jurors not to discuss the matter and dismissed them for the day.

The following day, before the jury was summoned to listen to the requested testimony, the jury sent the court another note, asking if it could take a vote before hearing the requested testimony. Counsel for the defendant posited that the note was an indication that the jurors had begun deliberating before the court instructed them to do so and argued consequently that the note should be ignored or a mistrial should be declared. The court, however, construed the note as a request for guidance as to whether the jury could resume deliberating before listening to the testimony requested the previous day. Accordingly, in response to the jury's note, the court reiterated to the jurors that deliberations were to be conducted only when all exhibits were in the room and once the jurors were all

assembled. The court indicated that if the jury wanted to hear the requested testimony, it was prepared to play it. The court then sent the jury to resume deliberating.

Later that same day, the jury returned with its verdict. The defendant subsequently filed a motion for a new trial based, in part, on alleged juror misconduct. Specifically, the defendant argued that a new trial should have been granted because the court did not conduct a preliminary inquiry of the jurors asking them whether, before submitting their question asking if they could take a vote prior to hearing the requested testimony, they had deliberated in violation of the court's instructions. The court subsequently denied the motion.

We first set forth the principles that guide our review of the defendant's claim. "To ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment . . . a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality. . . .

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations [or the possibility] of jury [bias or] misconduct will necessarily be fact specific. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged [or possible] jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate [the possibility] of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias the defendant must raise his

contention of bias from the realm of speculation to the realm of fact. . . .

"Consequently, the trial court has wide latitude in fashioning the proper response to allegations [or the possibility] of juror bias. . . . [W]hen . . . the trial court is in no way responsible for the [possible] juror misconduct [or bias], the defendant bears the burden of proving that the misconduct [or bias] actually occurred and resulted in actual prejudice. . . .

"[W]here the defendant claims that the court failed to conduct an adequate inquiry into possible juror bias or prejudice, the defendant bears the burden of proving that such bias or prejudice existed, and he also bears the burden of establishing the prejudicial impact thereof." (Internal quotation marks omitted.) *State* v. *Brown*, 96 Conn. App. 700, 704–706, 901 A.2d 86, cert. denied, 280 Conn. 912, 908 A.2d 539 (2006).

The defendant claims that the court's response to the jurors' note was insufficient and that his request for a new trial should have been granted. We first assess the court's response.

The defendant argues that the jurors engaged in premature deliberations on the basis that they inquired whether they could take a vote prior to reconvening and listening to testimony they had requested. The defendant further contends that the court was obligated, pursuant to *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc),[7] to conduct an investigation

---

[7] Our Supreme Court indicated that in the appropriate circumstances, "a preliminary inquiry of counsel may be all that is necessary and that the form and scope of the inquiry was within the court's discretion." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 176, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). Furthermore, the court in *Brown* recognized that "the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of jury misconduct, whatever their source. There may well be cases, therefore, in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the

on the record. The state counters that the court conducted a sufficient *Brown* hearing and that the defendant failed to demonstrate any prejudice. We agree with the state.

The record reveals that the court conducted a preliminary inquiry, on the record, by listening to the arguments of both the prosecutor and defense counsel. The court also examined the note itself and determined that the question asked by the jury did not suggest that the jurors had deliberated improperly but instead indicated that they were simply seeking guidance from the court as to their permissible behavior. Moreover, because the court had instructed the jurors on when they properly could deliberate, "unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State v. McCleese*, 94 Conn. App. 510, 514, 892 A.2d 343, cert. denied, 278 Conn. 908, 899 A.2d 36 (2006). Thus, it is apparent that the court did not ignore the note, as the defendant suggests, and instead appropriately conducted a preliminary inquiry of counsel, on the record, regarding the note. Furthermore, it is not apparent from the jurors' note that there was juror misconduct requiring the court to conduct a full evidentiary hearing or to grant the defendant a new trial. The defendant did not move this contention from the realm of speculation to the realm of fact and, thus, did not satisfy the burden of proving that misconduct likely occurred and resulted in actual prejudice. We conclude, therefore, that the court did not abuse its discretion by the limited scope of its investigation of alleged juror misconduct.

### III

The defendant next contends that, when instructing the jury on the charges of attempt to commit murder and

record, that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing . . . ." (Citations omitted.) *State v. Brown*, supra, 235 Conn. 527–28.

reckless assault in the first degree, the court improperly provided the jury with an "acquittal first" instruction, thereby depriving the defendant of his constitutional right to due process and a fair trial. We disagree.

The following additional facts relate to the defendant's claim. Because the defendant was charged with two legally inconsistent offenses[8] of attempt to commit murder and reckless assault, both the defendant and the state, in their respective requests to charge, asked the court to instruct the jury that it could not find the defendant guilty of both crimes.[9] The court instructed the jury in accordance with the parties' requests as to this issue.[10]

---

[8] In the first count, the state charged the defendant with the crime of attempt to commit murder, which required proof "that the defendant acted with the conscious objective to cause" the death of S. *State* v. *King*, 216 Conn. 585, 593, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991). In the second count, the state charged the defendant with the crime of reckless assault in the first degree, which required proof that "that the defendant acted recklessly, and thereby created a risk of death to the victim." Id. "To return verdicts of guilty for both attempted murder and [reckless] assault in the first degree, therefore, the jury would have had to find that the defendant simultaneously acted intentionally and recklessly with regard to the same act and the same result, i.e., the injury to the victim." Id. Intentional conduct and reckless conduct, however, are mutually exclusive and inconsistent. Id., 593–94. Accordingly, it would be legally inconsistent to convict the defendant of both crimes.

[9] During the charging conference, the state observed, in relevant part: "I'm not sure that it would be wise to tell the jury to go to attempted murder first because that will kind of highlight that for them. So, my charge, as I give it to you, I think is very neutral; just tell them, basically, you can't be convicted of both. I was careful not to say, consider the attempted murder first; if you're not guilty on that, go to the assault first. I think it's up to them to pick which one because they aren't necessarily—because it's not [a] lesser included offense. It's a separate charge. Very generic, pick one, if you pick neither is basically what I was trying to accomplish in my charge, rather than pointing first to attempted murder, then if you're not guilty there, go to assault first. They should just be told you can't convict him of both." Defense counsel agreed with the prosecutor's remarks.

[10] The court instructed the jury as follows: "Those are counts one and two. I need to tell you that you cannot find the defendant guilty of counts one and two. It's either or. Guilty, count one, then you would skip to count three. Not guilty of count one, then you would consider assault in the first

Before completing its instructions, however, the court, outside the jury's presence, listened to the concerns of the parties, which prompted the following colloquy between defense counsel and the court:

"[Defense Counsel:] My only concern, Your Honor, is a couple of times you instructed them that if they first find him not guilty of attempted murder, then they must consider assault in the first degree. I think it makes it sound like the assault in the first degree is a lesser included offense of the attempted murder. I don't want them to get the impression because it is by no means a lesser offense. If there—I'm not exactly sure how to cure that.

"The Court: I'm going to summarize and tell them they cannot find him guilty of counts one and two. They can find him guilty of either or, not both. My concern was directing them as we—we alluded to earlier outside the jury's presence as to instruct as to how they are going to proceed with the deliberations. Begin with count one or count two. They can start with count three. For all we know, we don't know how they are going to deliberate. I'm going to instruct them in the course of deliberations [that] they cannot convict on count one and count two. It's either or."

degree. Again, you can only find the defendant guilty of count one—either count one or count two. You cannot find the defendant guilty of count one and two. Of course, you are free to find the defendant not guilty of all counts based upon the evidence you find them to be. But count one, if you find the defendant guilty based upon the evidence presented here, then the state has satisfied the burden of proof beyond a reasonable doubt as to each essential element, then you consider count three. I'm getting to count three. If you find the defendant not guilty of count one, that's attempted murder, then you consider whether or not he's guilty of count two, assault, pursuant to the statute as I have defined it for you, conduct evincing an extreme indifference to human life, recklessly engaged in that conduct, which created a substantial risk of death. Risk of death to another person thereby caused serious physical injury. That's count two. And count one has a different intent. That's basically the reason why it's specific intent for murder, attempt to commit murder, and it's reckless in the second count."

Subsequent to listening to concerns of the parties and after the jury returned, the court completed its instructions to the jury. The court, in relevant part, instructed: "Now, in regard to your deliberations on any of the counts. On count one, whenever you deliberate on that count, whatever order you so desire, I don't know how you choose, that's your function, your function alone. You can only convict, should the evidence be there, on count one or count two. You cannot convict on both count one and count two. You cannot. Should you find the state has not proven the elements of the crime, proof beyond a reasonable doubt on count one, consider count—then you consider whether or not the state has proven the elements on count two . . . . You just cannot convict on count one and count two. You cannot do that. That's separate and distinct. Reason being is because the intent requirement, the mental state, is different. One involves reckless. One involves a specific intent."

The following day, the jury returned with a verdict of guilty of the crime of attempt to commit murder and not guilty of the crime of reckless assault in the first degree.

The defendant does not claim that the court's instructions to the jury that it could find guilt on either or neither counts, but not both counts, was improper. Instead, the defendant argues that the court's instructions that only after concluding that the defendant was not guilty of count one should the jury then consider count two had the effect of misleading the jury. In particular, he argues that the court's instructions emphasized the importance of count one and minimized the importance of count two, thus unfairly influencing the jury's choice between the two and resulted in denying the defendant his constitutional rights to a fair trial and due process. We disagree.

"We begin by setting forth the applicable standard of review. The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 188, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).

Here, the court's objective was to ensure that the jury did not render a legally inconsistent verdict. Contrary to the defendant's assertions, the record reflects that the court did not emphasize the importance of count one or minimize the importance of count two. Moreover, at no time did the court refer to the two charges as greater or lesser included offenses. Sequentially, the attempted murder charge was the first count in the information and reckless assault was the second count in the information. We believe that the record fairly reveals that the court was attempting to identify an orderly manner for the jury to consider the legally inconsistent charges. "It is . . . the duty of the court to structure the jurors' deliberations in a manner that permits them to perform in an orderly fashion their fact-finding function . . . ." *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993).

Furthermore, although the court instructed the jury to first consider the charges in the first count before considering the charges in the second count, it also

instructed the jury as follows: "On count one, whenever you deliberate on that count, whatever order you so desire, I don't know how you choose, that's your function, your function alone. You can only convict, should the evidence be there, on count one or count two. You cannot convict on both count one and count two. You cannot." Thus, when all the instructions are read in their entirety and judged by their total effect, it is evident that the court did not mislead or misrepresent the case to the jury. Furthermore, the court was neither emphasizing nor minimizing the importance of one count over the other. Instead, the court emphasized the different mental elements or states of the two charged crimes and that the jury could not find the defendant guilty on both because it would be legally inconsistent to do so. We conclude that the court did not unfairly influence the jury's choice between the two charged crimes.

## IV

The defendant's final claim is that the evidence presented at trial was insufficient to support his conviction of risk of injury to a child in violation of § 53-21 (a) (1). Specifically, the defendant argues that, because he never made physical contact with C, the state failed to prove that his actions constituted an "act" upon a child that was "likely" to injure her health.[11] We disagree.

[11] Though the defendant limits his claim to that there can be no violation of the act prong of General Statutes § 53-21 (a) (1) without physical contact between the defendant and the victim, we also note that the present case is distinguishable from State v. Winot, 95 Conn. App. 332, 897 A.2d 115, cert. granted on other grounds, 279 Conn. 905, 901 A.2d 1229 (2006), and State v. Schriver, 207 Conn. 456, 542 A.2d 686 (1988), in which the defendants' convictions for violating the act prong of § 53-21 (a) (1) were reversed on the ground that the acts involved in those cases were of insufficient severity to constitute a risk of injury. In Winot, the "act" was a forcible pull on the victim's arm, and in Schriver, the defendant's "act" was to grab the waist of a fully clothed thirteen year old girl while saying something sexually suggestive. Although this court and our Supreme Court found those two circumstances not violative of § 53-21 (a) (1), here, however, where the defendant chased the minor with a knife, we confront a different level of

We begin by setting forth the applicable standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 282, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

Section 53-21 (a) provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ." "We are mindful that § 53-21 (a) (1) is broadly drafted and was intended to apply to any conduct, illegal or not, that foreseeably could result in injury to the health of a child." *State* v. *Scruggs*, 279 Conn. 698, 724–25, 905 A.2d 24 (2006). Moreover, our Supreme Court has interpreted § 53-21 (a) (1) as being comprised of two distinct prongs, the "situation prong" and "act prong," that criminalize or prohibit two general types of behavior.[12] See *State* v. *Padua*, 273 Conn. 138,

conduct that the jury reasonably could have found was proscribed by § 53-21 (a) (1).

[12] The "situation prong" refers to the language in General Statutes § 53-21 (a), which provides that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a *situation* that the life or limb of such child is endangered, the health

148, 869 A.2d 192 (2005); see also General Statutes § 53-21 (a) (1).

Under the act prong, the state must prove that the defendant, with the general intent to do so, committed "(1) an act (2) likely to impair the morals or health (3) of a child under the age of sixteen." (Internal quotation marks omitted.) *State* v. *Sullivan*, 11 Conn. App. 80, 99, 525 A.2d 1353 (1987); see also *State* v. *March*, 39 Conn. App. 267, 275, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995). The defendant does not dispute that C was younger than the age of sixteen at the time of the incident but does argue that his actions did not constitute an act likely to injure C's health. The defendant argues that one can be convicted under the act prong of § 53-21 (a) (1) only by physically touching the victim's body. In other words, the defendant claims that because he did not make physical contact with C while chasing her, he did not commit an act likely to impair her health or morals. We are unpersuaded.

In support of his argument, the defendant cites cases holding that an actual touching of the victim is required for a conviction under the act prong of § 53-21 (a) (1). We agree that there are several cases in which the court either in its holding or by dicta has indicated that the act prong of § 53-21 (a) (1) requires physical contact. Our review of pertinent decisional law, however, reveals that the only cases in which this has been the holding of the court have involved sexual behavior.

In *State* v. *Robert H.*, 273 Conn. 56, 866 A.2d 1255 (2005), a case on which the defendant relies in supporting his proposition that an actual touching of the victim

of such child is likely to be injured or the morals of such child are likely to be impaired . . . shall be guilty of a class C felony . . . ."

The "act prong" refers to the language in § 53-21 (a) (1) that provides: "or does any *act* likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

is required, the defendant was charged, as the defendant was in the present case, with risk of injury under the act prong of General Statutes (Rev. to 1997) § 53-21 (1). The critical difference, however, between the present case and *Robert H.* is that *Robert H.* involved acts of sexual misconduct. In *Robert H.*, our Supreme Court expressly limited its holding to cases involving sexual contact. The court stated that "*in cases concerning alleged sexual misconduct,* 'an act likely to impair the . . . morals of . . . [a] child' . . . must involve a physical touching of the victim's person in a sexual and indecent manner. Likewise, we conclude that 'an act likely to impair the health . . . of . . . [a] child' . . . *when committed in a sexual context,* includes only those acts that involve a direct touching of the victim's person and are or are likely to be injurious to the victim's physical health." (Emphasis added.) Id., 77. "Accordingly, we interpret that portion of § 53-21 (1) prohibiting an act of moral impairment, *insofar as it concerns sexual misconduct,* to include within its purview only those sexual and indecent acts that involve a physical touching of the victim's person."[13] (Emphasis added.) Id., 74. That holding, therefore does not apply to the facts of this case, which does not involve acts of sexual misconduct.

The dicta of *Robert H.,* however, supports the state's proposition. In that case, the state argued that both our Supreme Court and this court have eliminated the physical contact requirement of the second prong of § 53-21 (a) (1). In response, the court in *Robert H.* distinguished cases involving acts of a sexual nature from

---

[13] In its analysis, the court also noted: "We begin our analysis with an overview of the language of [General Statutes (Rev. to 1997)] § 53-21 (1) and the case law interpreting § 53-21, with particular emphasis on the conceptual distinction between the "situation" and "act" prongs of § 53-21 (1) and the emergence of the physical contact requirement as an element of an offense in cases involving *acts of a sexual misconduct.*" *State* v. *Robert H.,* supra, 273 Conn. 64.

others. Thus, for the court in *Robert H.*, our decision in *State* v. *March*, supra, 39 Conn. App. 267, was distinguishable because the claim relating to the second prong in *March* did not involve a sexual act. Instead, in *March*, the defendant was convicted under the second prong of § 53-21 (a) (1) for giving alcohol to a four year old. In rejecting the defendant's claim that such conduct could not violate the second prong, this court opined: "In this case, the defendant handed a cup containing rum to the four year old victim who had requested something to drink. This is not the creation of a situation that might cause injury to the child. Instead, due to the age of the victim, this is an act directly perpetrated upon a child that is likely to impair the health or morals of the child." Id., 276. As in *March*, the nonsexual conduct in this instance did not involve physical contact, and the jury reasonably could have determined that the nature of the act was likely to impair the child's health or morals.

Additionally, it is important to note that "[t]he general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). Furthermore, although § 53-21 (a) (1) is divided into an act prong and situation prong, "[i]n both instances, the focus of the statute is on the behavior of the defendant . . . ." *State* v. *Apostle*, 8 Conn. App. 216, 242, 512 A.2d 947 (1986).

Thus, we believe that the mere fact that the defendant did not physically touch C while pursuing her should not relieve him of criminal liability under the act prong of § 53-21 (a) (1). If we were to hold otherwise and adopt the defendant's arguments that a physical touching is required to convict the defendant, it would make the language of § 53-21 (a) (1) meaningless and frustrate

its purpose. For example, pursuant to the defendant's interpretation, if one threw a knife at a victim or attempted to stab a victim while in pursuit, his or her culpability would depend on the accuracy of his or her arm or on his or her speed in relation to that of the intended victim. Such an interpretation of § 53-21 (a) (1) would render the statute an absurdity. Additionally, such a view would be at odds with the stated purpose of § 53-21 (a) (1) to protect the physical well-being of children. Finally, such a view completely fails to provide a proper focus on the behavior of the defendant, as our decisional law requires. See id.

The defendant further argues that even if a physical touching is not required under the act prong of § 53-21 (a) (1) in nonsexual misconduct cases, the evidence was insufficient to support a finding that his actions were "likely" to injure C. Specifically, the defendant argues that the state did not provide any evidence that established, with any degree of certitude, that he would make physical contact with C. We disagree.

"Section 53-21 of the General Statutes does not require a showing that, in fact, the health of the child was impaired but only that the conduct or the acts of the defendant were such that the health of the child was likely to be impaired." (Internal quotation marks omitted.) *State* v. *Peters*, 40 Conn. App. 805, 825 n.12, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996). "The term 'likely' and the phrase 'likely to impair' are defined neither in § 53-21 (a), nor in any related provision of our General Statutes. In the absence of statutory guidance as to the meaning of a particular term, it is appropriate to look to its dictionary definition in order to discern its meaning in a given context. . . .

"Our review of such sources reveals that, depending on the context, the term 'likely' most commonly is understood as an adjective that denotes when particular subject matter will probably come to be or when its

chances of realization are more probable than not. Oxford English Dictionary (2d Ed. 1989) (defining 'likely' as something 'that looks as if it [will] happen, be realized, or prove to be what is alleged or suggested'); The American Heritage Dictionary of the English Language (3d Ed. 1992) (defining 'likely' as '[p]ossessing or displaying the qualities or characteristics that make something probable'). In contrast, dictionary sources indicate that the term 'possible,' again, depending on the context, primarily has a lower degree of probability or certitude of realization. Oxford English Dictionary, supra (defining 'possible' as '[t]hat may be [i.e. is capable of being]; that may or can exist, be done, or happen'); The American Heritage Dictionary of the English Language, supra (defining 'possible' as something that is 'capable of happening, existing or being true.' . . . The common understanding of the term 'likely' therefore ordinarily conveys a degree of certitude as to realization that is in conformity with a definition of 'probable,' but that counsels against an understanding of its meaning as merely 'possible.' " (Citation omitted.) *State* v. *Romero*, 269 Conn. 481, 491–92, 849 A.2d 760 (2004). Thus, the proper definition of the term "likely" has been deemed to be "probable" or "in all probability." (Internal quotation marks omitted.) *State* v. *Ritrovato*, 85 Conn. App. 575, 606, 858 A.2d 296 (2004), rev'd in part on other grounds, 280 Conn. 36, 905 A.2d 1079 (2006).

Here, construing the evidence in the light most favorable to sustaining the verdict, we believe it was reasonable for the jury to conclude that the defendant's actions of chasing after C with a knife made it "probable" that he would injure or come into contact with C. Accordingly, the jury heard sufficient evidence that, if credited, would support its finding that the defendant's actions, of chasing C with a knife, created a risk of injury to C.

The judgment is affirmed.

In this opinion HARPER, J., concurred.

FLYNN, C. J., dissenting in part. I agree with parts I, II and III of the majority opinion but respectfully dissent as to part IV. I would reverse the judgment of conviction on the charge of risk of injury to a child.

General Statutes § 53-21, the risk of injury to a child statute, is rendered constitutional, despite its broad language, only because of judicial glosses limiting its scope and defining its meaning, which render enforceable what otherwise would be an unconstitutionally vague statute. "Our case law has interpreted § 53-21 (1) [now § 53-21 (a) (1)] as comprising two distinct parts and criminalizing two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. . . . Thus, the first part of § 53-21 (1) [now § 53-21 (a) (1)] prohibits the creation of situations detrimental to a child's welfare, while the second part proscribes injurious acts *directly perpetrated on the child*." (Citation omitted; emphasis added.) *State* v. *Padua*, 273 Conn. 138, 147–48, 869 A.2d 192 (2005).

In the present case, the defendant, Clifton Owens, took two or three steps toward the child involved, while armed with a knife, but he did not come into physical contact with her. In *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988), our Supreme Court recognized "an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse." See, e.g., *State* v. *McClary*, 207 Conn. 233, 234–39, 541 A.2d 96 (1988) (six month old child suffered brain injury from violent shaking); *State* v. *Eason*, 192 Conn. 37, 38, 470 A.2d 688 (1984) (two year old child severely beaten with belt), overruled

in part on other grounds by *Paulsen* v. *Manson*, 203 Conn. 484, 491, 525 A.2d 1315 (1987); *State* v. *Martin*, 189 Conn. 1, 6, 454 A.2d 256 (child violently pushed), cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Palozie*, 165 Conn. 288, 290–91, 334 A.2d 468 (1973) (child beaten and thrown around).

Pursuant to *State* v. *March*, 39 Conn. App. 267, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995), to meet its burden of proof under the act portion of § 53-21 (a) (1), the state was required to prove: "(1) the victim was less than sixteen years old; (2) the defendant committed an act *upon the victim*; (3) the act was likely to be injurious to the victim's health . . . and (4) the defendant had the general intent to commit the act upon the victim." (Emphasis added.) Id., 275.

In *State* v. *Winot*, 95 Conn. App. 332, 897 A.2d 115, cert. granted, 279 Conn. 905, 901 A.2d 1229 (2006), the defendant was charged with a violation of the act section of § 53-21 (a) (1). In the third count of the substitute information in *Winot*, the state had charged the defendant with "violating § 53-21. It alleged 'that on July 23, 2002 near the intersection of Bissell Street and Spruce Street in Manchester, Connecticut at approximately 5:00 p.m., the defendant did *an act* likely to impair the health of a twelve (12) year old girl, including but not limited to: driving his car down Spruce Street and stopping it alongside the girl, exiting the vehicle, approaching the girl, grabbing her arm, holding onto her, telling her to get into his vehicle, trying to drag her into his car, where he had a noose made of rope and duct tape.' " (Emphasis in original.) Id., 360. As we explained in *Winot*, however, "[t]he state conceded at oral argument that even when construed in the light most favorable to the state, the evidence that the defendant forcibly took and pulled on the victim's arm alone

was insufficient to sustain a conviction for risk of physical injury under *State* v. *Schriver*, [supra, 207 Conn. 456]." *State* v. *Winot*, supra, 361.

In *Schriver*, the Supreme Court recognized a judicial gloss related to the act portion of § 53-21, such that it placed a limit on the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant physical abuse. *State* v. *Schriver*, supra, 207 Conn. 466. In the present case, there was no physical harm resulting from some deliberate blatant physical abuse. In short, the defendant was charged by the state with engaging in conduct that did not fit the charged crime.

The state could have charged the defendant under the situation prong of § 53-21 (a) (1), which prohibits placing a child in a situation where his or her health may be endangered. See *State* v. *Padua*, supra, 273 Conn. 148 ("[u]nder the 'situation' portion of § 53-21 (1) [now § 53-21 (a) (1)], the state need not prove actual injury to the child"). Under this situation portion, the act of displaying the knife and taking two or three steps toward the child reasonably could have resulted in a guilty finding by the jury because it could have created a situation likely to have impaired the health of the child. See id., 158–59 (act of cutting and packaging marijuana in presence of children placed them in situation that might be harmful to their health). The *act* of creating such a *situation*, while sufficing to support a conviction under the situation portion of § 53-21 (a) (1), does not support a conviction under the act portion of § 53-21 (a) (1), for which the defendant in this case was charged and convicted.

The result of the majority holding is to meld impermissibly both the situational and act sections of the statute, placing the statute in constitutional jeopardy. In my opinion, this is exactly what our Supreme Court sought to avoid in *Schriver* when it limited the act

section of § 53-21 to instances of physical harm consisting of deliberate blatant physical abuse.

In this case, I would reverse the conviction of a violation of the act portion of § 53-21 and would affirm the judgment of the trial court in all other respects.

Respectfully, therefore, I dissent in part.