STATE OF CONNECTICUT *v.* JAMES N.[1]
(AC 29360)

Bishop, Harper and Beach, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued May 21—officially released August 25, 2009

*Richard Emanuel*, with whom was *Eugene J. Riccio*, for the appellant (defendant).

*Theresa Anne Ferryman*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

BISHOP, J. The defendant, James N., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] On appeal, the defendant claims that the court failed to grant sufficient relief after determining that jury misconduct had occurred. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendant's appeal. On August 30, 2007, the defendant was charged with sexual assault in the first degree and two counts of risk of injury to a child. On September 4, 2007, the defendant's jury trial commenced, and on September 6, 2007, the evidence portion of the trial concluded. Throughout the trial and at the conclusion of the evidence, the court repeatedly admonished the jury about its obligation not to discuss the case before it received it for deliberations.

On September 7, 2007, in advance of closing argument and the court's charge to the jury, the court officer, Martha Morrarty, reported on the record that on the previous day, as the jurors entered the jury room to collect their belongings, she overheard them discussing the case. She stated: "Yesterday, after Your Honor excused the jury for the day, I went into the hallway

---

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child [is guilty of risk of injury to a child] . . . ."

because there were some jurors who needed the use of the elevator. And as the jury was headed back into the jury room to collect their things, I overheard [J][4] state, 'I'm really surprised, I thought there would have been more evidence, character witnesses and things like that.' And I did hear agreement from at least one male juror. And then the door closed, and I didn't hear anything further. All jurors were present when that statement was made, except for [L], who was in the hallway with me, although she did hear the statement as well. As I said, once the door closed, I didn't hear anything further." Morrarty later stated that after the remark was made, L "immediately turned her head and looked at" Morrarty, which gave Morrarty the impression that L heard J's statement.

On the basis of Morrarty's account of the jury's pre-submission discussion, the defendant moved for a mistrial. The court denied the motion as premature. The defendant also requested that J be removed from the jury and that the court question the panel to identify the juror that had expressed agreement with J's statements and to determine whether there was further discussion of the case after the jury room door had closed. The court granted the defendant's request that jurors be questioned regarding possible juror misconduct.

The court began its canvass with juror J, who denied making any remarks to the other jurors as he left the courtroom. He also stated that he did not have any recollection of jurors discussing the quality or quantity of the evidence presented. Following J's testimony, the defendant and the state agreed that J should be removed as a juror because, based on Morrarty's statements, they did not believe J's claim that he did not make any remarks regarding the evidence presented at trial.

---

[4] To protect the privacy of the jurors, we refer to them by initial. See *State* v. *Newsome*, 238 Conn. 588, 624 n.12, 682 A.2d 972 (1996).

The court next canvassed D, who only recalled jurors expressing their surprise that they were getting out early. Counsel for the defendant was then permitted to question D. He began to ask, "specifically . . . did you hear anyone in there, a male juror, make any statement to the effect . . . ." At this juncture, the court stopped counsel before he could finish the question and excused the juror from the courtroom. The court then stated to defense counsel: "The concern I have . . . if you are going to ask the question now, you are going to taint [D], who may not have heard anything. I will listen to you. [D] said he heard nothing. I don't want to lose [D] by saying something to him." Counsel replied that he intended to ask D: "[D]id you hear any male juror make any statement expressing surprise that there wasn't more evidence, like character evidence. I mean, that's a fair recitation to synthesize what . . . Morrarty said occurred. So, I would just make those three questions." The court determined that it would not permit the defendant's questions out of concern that D would be tainted by them.

Juror L, who remained in the hallway outside the jury room when the purported remarks were made, was the next juror called to testify. On questioning from the court, she repeatedly denied hearing any discussions among the jurors. The court then stated, "I take it, based upon that answer, that there was no discussion about the evidence or the case in any way." L replied that she only heard talking in general but that she was not paying attention to the remarks that were made. The defendant then requested that he be heard outside the presence of the juror. Before excusing L, the court asked her if she could remain fair to both sides and if she remembered that it was the state's burden to prove the defendant's guilt beyond a reasonable doubt, to which she replied affirmatively. After L was excused, the defendant requested that the court ask her "whether . . .

she heard any comment by any juror regarding the evidence or lack of evidence in the case, consistent with what we were told by . . . Morrarty about what she heard." Once the court declined to ask L that question, the defendant objected, and the court noted the objection and further stated, "I will consider that [the objection] applies to every juror who I do not ask that question . . . ."

Next, juror R stated that he only recalled jurors expressing their surprise that the trial ended "so abruptly and quickly." The court then asked R, "Was there any comment with respect to the nature of the evidence or lack thereof that you remember?" R replied, "[n]ot that I recall."

Juror E stated that when she was outside the jury room, she overheard a juror express surprise because the defense had not called any witnesses. E never saw the juror who made the remarks, but she thought that it was the female, alternate juror. She further stated that the remarks in question did not impair her ability to be fair to both sides.

Juror S did not recall specific remarks from the day in question other than the remarks that the court day was surprisingly short. He confirmed that he had not made up his mind with respect to the case and that he could be fair to both sides.

Juror K recalled hearing J discussing the trial. She stated: "I think he said he thought the prosecution would be calling other witnesses or something to that effect and that it seemed to be stopping abruptly or something to that terminology. But I was on my way out the door as he was speaking." She further stated that the remarks would not effect her ability to be fair to both sides.

C, the alternate juror, was the last to be questioned. She stated: "I remember one person had stated that he

thought that the defense would have called additional testimony or additional witnesses. And I was surprised, and I agreed with him." J fit the description of the juror described by C.

The defendant then renewed his motion for a mistrial, claiming that "it's clear that there were premature deliberations," which amounted to juror misconduct. The defendant also argued that in addition to J, L should be removed because, according to Morrarty, she overheard J's remarks, and C should be removed because she expressed agreement with J's comments.

The court declined to excuse L. In explaining its decision, the court commented: "I start with the premise that I don't question and I don't think anyone questions what . . . Morrarty told us, and this is not in any way disparaging what . . . Morrarty told us. But the comment concerning [L], as to whether she heard or didn't hear, comprehend or didn't hear or didn't comprehend what was said when she's out in the hall and others are in the jury room. I'm not sure, with all due respect to . . . Morrarty, that that's a conclusive decision that . . . Morrarty could have made. Even if [L] looked at her, that doesn't mean, in my mind, that [L], one, either did anything wrong or was tainted by the statement."

The court then excused J, finding that "it's clear that he made a comment that he should not have made," and his comment "rises to the point in mind that he is suspect . . . ." The court also excused C, stating that although she was "less culpable" than J, the court wanted to "err on the side of caution." The court concluded, however, that the jurors' dismissal and the events in question did not rise to a level of juror misconduct that would warrant a mistrial. The court replaced J with the last remaining alternate juror. The remaining jurors reiterated that they would remain fair and impartial to both parties.

The jury returned a verdict of guilty on all counts. On October 23, 2007, the court denied the defendant's postverdict motions for a judgment of acquittal and for a new trial. The defendant was sentenced to thirty years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

The defendant's claim on appeal is that the court improperly failed to grant sufficient relief after determining that jury misconduct had occurred. Specifically, the defendant argues that the presubmission discussion by jurors constituted jury misconduct and that the court improperly (1) restricted his inquiry into the juror misconduct, (2) refused to remove L as a juror and (3) denied the defendant's motion for a mistrial. We assess each claim in turn.

After conducting a juror misconduct hearing, the court excused jurors J and C. The court concluded that their dismissal was a sufficient remedy and that the jurors' conduct did not warrant a mistrial. On the basis of our review of the record, we conclude that the court's response was entirely proper.

Although the trial court enjoys wide discretion when confronted with a claim of juror misconduct, it must "ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment . . . [and therefore] a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality. . . .

"Consequently, the trial court has wide latitude in fashioning the proper response to allegations [or the possibility] of juror bias. . . . [W]hen . . . the trial court is in no way responsible for the [possible] juror misconduct [or bias], the defendant bears the burden of proving that the misconduct [or bias] actually

occurred and resulted in actual prejudice." (Internal quotation marks omitted.) *State* v. *Brown*, 96 Conn. App. 700, 704–706, 901 A.2d 86, cert. denied, 280 Conn. 912, 908 A.2d 539 (2006).

I

The defendant first claims that the court's inquiry into possible juror misconduct was inadequate. He argues that the court improperly restricted his inquiry into the misconduct by refusing to ask, and barring him from asking, whether the jurors had heard any other juror make a statement expressing surprise that more evidence was not presented. In response, the state argues that the court acted within its discretion when it limited the questioning to determine whether other jurors had heard the subject remarks without repeating them to avoid potentially tainting the jurors. We agree with the state.

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations [or the possibility] of jury [bias or] misconduct will necessarily be fact specific. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged [or possible] jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate [the possibility] of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. . . .

"[W]here the defendant claims that the court failed to conduct an adequate inquiry into possible juror bias

or prejudice, the defendant bears the burden of proving that such bias or prejudice existed, and he also bears the burden of establishing the prejudicial impact thereof." (Internal quotation marks omitted.) Id., 705–706.

"[A] trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations [or the possibility] of jury misconduct [or bias]: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system." (Internal quotation marks omitted.) Id., 705. Mindful of these principles, we now turn to the defendant's specific claims regarding the scope of the court's inquiry.

The record reveals that the sole issues before the court were whether J had remarked that he was surprised that the defendant did not offer more evidence and whether other jurors had heard and ultimately agreed with those remarks. The court carefully tailored its questioning to glean that information from the jurors while trying to avoid tainting them by exposing them to remarks they may not have heard. The court asked each juror what, if anything, he or she had heard during the events in question. The court also asked each juror if he or she would be able to remain impartial in reaching a verdict. When jurors indicated that they had heard remarks pertaining to the trial, the court probed further to determine whether those comments would ultimately result in bias. Additionally, if the court had acceded to the defendant's request for further inquiry, there was a realistic likelihood that such questioning could have tainted jurors who may not have heard J's comments.

Accordingly, we find no fault in the scope of the court's inquiry.

II

The defendant next argues that the court improperly refused to remove L as a juror. As noted, the court excused J for making suspect remarks and C for possibly being swayed by those remarks. As to L, the defendant contends that because the court found Morrarty to be credible and that her statements were reliable, the court should have inferred that L was lying when she denied hearing the remarks. We are not persuaded.

As noted, Morrarty stated that she was under the impression that L, who was standing beside her in the hallway when J made his remarks, also heard what he said. L testified that she did not hear the remarks. The court noted that it was not sure whether Morrarty could have made a conclusive decision as to whether L had heard J's remark. Although the court found Morrarty's impressions to be credible, it did not find that those impressions were conclusive of what L actually heard. Additionally, as noted, when questioned by the court, L confirmed her ability to remain fair to both sides and her awareness of the state's burden to prove the defendant guilty beyond a reasonable doubt. On this basis, it was within the court's discretion to find L credible and to permit her to remain a juror. See *State v. Osimanti*, 111 Conn. App. 700, 716, 962 A.2d 129 (2008), cert. granted on other grounds, 290 Conn. 914, 965 A.2d 554 (2009).

III

The defendant finally argues that the court improperly denied his motion for a mistrial. Specifically, the defendant contends that the court improperly relied on the remaining jurors' assurances that they remained

impartial and that the court improperly considered the interests of the two alleged victims. We do not agree.

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Ortiz*, 280 Conn. 686, 702, 911 A.2d 1055 (2006); see also Practice Book § 42-43.[5]

The record reveals that following the removal of J and C, the court notified the jury that two jurors had been excused and instructed the jurors not to "speculate as to why that is" or to allow it to affect their "continued deliberations and decision making in this case." The court also stated: "If any of you has any feeling whatsoever that you cannot give [the defendant] the presumption of innocence that he or anyone else

---

[5] Pursuant to Practice Book § 42-43, "[u]pon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case."

charged with a crime is entitled to and that you, for any reason whatsoever, cannot put the burden solely on the state, if it can, to prove his guilt beyond a reasonable doubt with evidence presented in this courtroom, I need you to tell me that. During my instructions of law, I'm going to tell you again about those things. I'm also going to tell—and I have told you already—[the defendant] has no obligation whatsoever. He sits there presumed to be innocent. And that is a foundational part of our criminal justice system. And if any of you have the slightest inclination that because of something that may have been said or a sense in your mind of an abrupt end to a trial or a sense that you expected anything either of [the defendant] and, or, his lawyer, then you need to tell me that. Because they have no obligation at all. . . . So, I am putting the responsibility on you. If any of you has any sense whatsoever that you cannot continue in the way that I have just discussed it, I expect you are going to tell me that."

The court then permitted the jurors to recess for lunch and to take that time to decide if they could determine the facts and apply the law impartially in the defendant's case. After lunch, all the jurors agreed that they remained impartial. "[I]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Internal quotation marks omitted.) *State* v. *Necaise*, 97 Conn. App. 214, 225, 904 A.2d 245, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

The defendant also argues that the court improperly considered the interests of the victims in its determination that a mistrial was not warranted. The facts belie the defendant's claim.

At the mistrial hearing, the court made the following statement regarding the victims' interests: "It is not only [the defendant] that the court has concerns about here.

I would be remiss, and frankly not completely candid—
and again, when I say this, that does not mean that I
take anything away from [the defendant's] rights, but
we also have two young children who were—and right-
fully so, I don't want anyone to think that [the defen-
dant] did anything wrong by seeking a trial; he had an
absolute right to have his case resolved by a jury. But
we have two young alleged victims who were asked to
testify, and I recognize that." The court then noted that
its primary concerns were, "one, to investigate any
alleged juror misconduct and, two, to make a determina-
tion as to whether the defendant has, in effect, raised
the contention of juror misconduct or bias from the
realm of speculation to the realm of fact and what
remedy, if any, is needed." The court concluded:
"[B]ased upon my hearing—and I'm excluding [J] and
[C]—what I am hearing is that although there was some
brief offhand type of discussion concerning the abrupt-
ness of the trial ending, although there was apparently
a comment by [J] which should not have been made,
that more should have come from the defense, so to
speak, in terms of either testimony or some form of
character testimony, perhaps. I don't believe that that
does rise to a level where I should grant a mistrial in
this case."

Although the court noted its concern about the vic-
tims, our review of the record leads us to the firm
conviction that the focus of its juror misconduct inquiry
centered on the interest of the defendant in receiving
a fair and unbiased trial. In an effort to serve that para-
mount interest, the court questioned each juror about
what, if any, improper remarks he or she had said or
heard. As a result of its inquiry, the court excused two
jurors. The court's actions fell well within its sound
discretion. Moreover, the defendant failed to show that
actual prejudice resulted from the court's handling of
the jury misconduct hearing and its denial of his motion

for a mistrial. We conclude that the court did not abuse its discretion in its conduct of the jury misconduct hearing and its determination to deny the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.